121 Cal.Rptr.2d 475 (2002)
99 Cal.App.4th 804
In re DANIEL H., a Person Coming Under the Juvenile Court Law.
Riverside County Department of Public Social Services, Plaintiff and Respondent,
v.
Amelia M., Defendant and Appellant.
No. E030881.
Court of Appeal, Fourth District, Division Two.
June 26, 2002.
Rehearing Denied July 16, 2002.
Review Denied September 11, 2002.
*476 Leslie A. Barry, under appointment by the Court of Appeal, Huntington Beach, for Defendant and Appellant.
William C. Katzenstein, County Counsel, and Julie A. Koons, Deputy County Counsel, for Plaintiff and Respondent.
Sharon S. Rollo, under appointment by the Court of Appeal, Chatsworth, for Minor.

OPINION
MCKINSTER, J.
The mother of Daniel H. appeals from a Welfare and Institutions Code section 366.26[1] order terminating her parental rights as to Daniel and freeing him for adoption. The mother argues that: (1) the trial court failed to inquire into and make orders for sibling visitation between Daniel and his sisters, and (2) Daniel and his sisters suffered from ineffective assistance of counsel because (a) they were all represented by the same attorney despite their conflicting interests in sibling visitation, and (b) their attorney failed to pursue sibling visitation. We affirm, concluding that the mother lacks standing to raise these issues because they are all based on *477 the minors' alleged interest in sibling visitation.

STATEMENT OF FACTS
At the time these proceedings were instituted, the mother had several children, including "Sister A" (age 11), "Sister B" (age 9), "Sister C" (age 8), "Sister D" (age 6), and 6-month-old Daniel, the subject of this appeal.
On July 30, 2000, the Department of Public Social Services (DPSS) took custody of Sister A and Sister C when their mother failed to pick them up after they returned from a week-long summer camp. Sister A and Sister C were immediately placed in a shelter home.
The next day, DPSS found the mother and observed Sister B, Sister D, and Daniel. The family was homeless, but Daniel was healthy and well fed, and Sister B and Sister D were animated and did not appear to have been mistreated. DPSS also interviewed the maternal grandmother. The grandmother claimed that the mother abused drugs. The grandmother said that the mother and the minors had lived with her for a few months, and during that time, the mother would come home early in the morning and take one or two of the daughters with her, leaving at least one of them to take care of baby Daniel. She said that Sister B was the daughter that the mother depended on the most. DPSS concluded that the mother relied heavily on the girls, Sister B in particular, and that Sister B appeared overworked and overstressed, and was at risk of becoming ill if not removed from the situation. The minors did not seem to be a priority for the mother, who was unconcerned about the family's transient lifestyle.
At the detention hearing, the court found probable cause for the initial detention of Sister A and Sister C, and ordered that the minors be placed with their mother and that DPSS assist the mother in finding suitable housing. The mother subsequently established residence in a motel that was frequented by drug dealers.
Prior to the jurisdictional hearing, the mother missed three appointments with DPSS. On a surprise visit, however, DPSS was able to talk to the mother. The mother admitted to using marijuana recently, but agreed to take a drug test. The mother said that she gave her food stamps to the kids to buy "junk" at the convenience store. Sister A and Sister B indicated that the maids paid them $5 to help clean the rooms. The jurisdictional/dispositional report stated that Sister A and Sister B "clearly run the household, taking care of each other and their siblings and running errands for their mother," and the "[m]inors have established a sense of family."
On September 17, 2000, the mother and the minors left the motel they were staying at and disappeared. They were discovered on October 5, 2000, when the mother came into the DPSS office on business relating to her food stamps. The mother said they had moved to another motel and she had a deposit down on a home, but the minors were immediately taken into custody. Sister A, Sister B, and Sister C were placed in one shelter home, and Sister D and Daniel were placed in another. When Sister A and Sister B were told that Sister D and Daniel would be placed elsewhere, they were shocked and wondered who would take care of Daniel.
On October 10, 2000, a jurisdictional/dispositional hearing was held. The court concluded that the children all came within the court's jurisdiction and placed the children with DPSS.
On March 1, 2001, the mother was arrested on outstanding warrants, and sentenced *478 to 270 days in jail with credit for 55 days of time served. In the meantime, Daniel began developing dramatically, learning to walk and talk, and became very bonded to his foster parents. On April 18, 2001, during a visit with the mother in jail, Daniel cried the entire time and clung to the social worker, but eventually went to Sister A as they were leaving. Sometime around then, Sister A was moved to a separate shelter home. The children generally used the weekly visits with their mother to play with each other, and a contact log entry dated March 5, 2001, stated that a sibling visit "went well." Additionally, the sisters began openly discussing sexual abuse they had suffered while in their mother's custody, and physical abuse they had witnessed while living with their relatives. Sister A confided in her foster mother's daughter that she began using drugs with her mother when she was 10 and had been molested.
On June 19, 2001, the court terminated reunification services as to Daniel and scheduled a selection and implementation hearing under section 366.26. The court continued services for the girls.
A prospective adoptive family was identified for Daniel, and they indicated that they were not interested in having Daniel visit with his family, but they would work with DPSS to help the children say good-bye. The updated case service plan indicated that sibling visitation would occur as directed by the adoptive parents.
The section 366.26 report indicated that during visits, Daniel liked to play alone with trucks rather than with the things his sisters were playing with. An updated contact log indicates that during a May 15, 2001, sibling visitation, Sister A played with Daniel, while the other girls played separately. Allegedly, the children had been playing and talking together before a social worker entered the room and began talking to them. During a June 5, 2001, sibling visitation, the children all played together and had fun. During a June 26, 2001, visitation, the children played and talked "appropriately." The children also seemed to enjoy a July 24, 2001, visit, but they got out of control and began running around to other visitation rooms. During a visit with the mother in jail, Daniel appeared interested in the toys, but not the people, and the mother let Sister B take care of Daniel. Sister D became very sad whenever Daniel's prospective adoptive parents came to see him.
The mother was released from jail on September 9, 2001, and on October 29, 2001, the court terminated parental rights and placed Daniel for adoption. The subsequent section 366.26 report regarding the girls indicates that the girls were reluctant to "agree" to having Daniel adopted, but have realized that he is in good hands.

DISCUSSION

1. Standing

The mother complains that the trial court failed to order sibling visitation, the children's attorney failed to pursue sibling visitation, and the same attorney improperly represented all the minors despite their conflicting interests regarding sibling visitation. As is apparent, these arguments all have one thing in common: sibling visitation. We find that the mother lacks standing to raise that issue, in any of its various forms.
Case law consistently holds that a parent lacks standing to raise the issue of sibling visitation, reasoning that the minor's interest in maintaining a relationship with siblings is unrelated to the parents' interest in reunification. (See, e.g., In re Cliffton B. (2000) 81 Cal.App.4th 415, 425, 96 Cal.Rptr.2d 778 (Cliffton B.); In re *479 Frank L. (2000) 81 Cal.App.4th 700, 703, 97 Cal.Rptr.2d 88 (Frank L.).) This line of cases easily disposes of the mother's argument that the trial court erred in not ordering sibling visitation. That issue can only be raised by the minors. But what about the mother's ineffective assistance of counsel arguments? Do parents have standing to raise sibling visitation issues indirectly by using them as the basis for an ineffective assistance of counsel claim?
Although the answer seems selfevident to us, it has actually been a source of some controversy. In re Cliffton B., supra, 81 Cal.App.4th at pages 421-428, and footnote 6, 96 Cal.Rptr.2d 778 (Fourth Appellate District, Division Three), and In re Candida S. (1992) 7 Cal.App.4th 1240, 1252, 9 Cal.Rptr.2d 521 (Candida S.) (Sixth Appellate District), both held that parents had standing to argue that counsel improperly represented multiple children with conflicting interests on the issue of sibling visitation. Cliffton B. and Candida S. both relied on a line of cases generally holding that parents have standing to argue that their children are entitled to independent counsel, reasoning that independent representation of the child's interests affects the parent's interest in the parentchild relationship. (See, e.g., In re Patricia E. (1985) 174 Cal.App.3d 1, 6-7, 219 Cal.Rptr. 783 (Patricia E.).) On the other hand, Frank L., supra, 81 Cal.App.4th at pages 703-704, 97 Cal.Rptr.2d 88 (Fourth Appellate District, Division One), held that a parent lacked standing to make this sort of hybrid ineffective assistance of counsel/sibling visitation argument. Frank L. specifically rejected the cases that generally permit parents to raise their children's independent counsel claims, noting that parents still must show that counsel's conflict of interest affected the parent's interests, not just those of the minors. (Ibid.)
We find Frank L. to be persuasive. We see no rational basis for denying parents the right to raise sibling visitation directly but permitting them to raise it indirectly by way of an ineffective assistance of counsel claim. Standing depends on the nature of the party's interests, not the phrasing of the argument. Effective or not, counsel's advocacy, or lack thereof, regarding sibling visitation simply does not affect the parent's interests in reunification.
Candida S. and Cliffton B. fail to provide an adequate rationale for their contrary holdings. Candida S. merely cites to Patricia E. without analysis. (Candida S., supra, 7 Cal.App.4th at p. 1252, 9 Cal. Rptr.2d 521.) However, Patricia E. involved an attorney who simultaneously represented DPSS and the child. As a result, the parent was able to argue that independent counsel may have fought for reunification, which directly implicated the parent's interests and resulted in the finding of standing. (Patricia E., supra, 174 Cal.App.3d at pp. 6-7, 219 Cal.Rptr. 783.) In this case, it is merely alleged that independent counsel would have argueo for greater sibling visitation, not reunification. (See In re Devin M. (1997) 58 Cal.App.4th 1538, 1542, 68 Cal.Rptr.2d 666 [distinguishing Patricia E. on similar grounds].)
Additionally, Candida S. and Cliffton B. both cite this court's prior decision in In re Elizabeth M. (1991) 232 Cal.App.3d 553, 283 Cal.Rptr. 483 (Elizabeth M. which involved a claim by a father that his children were entitled to independent counsel because their interests conflicted as to both reunification and sibling visitation. Relying on Patricia E., Elizabeth M. generally held that the father had standing to raise the independent counsel claim, but did not distinguish between the underlying issues of reunification and sibling visitation. *480 (Id. at p. 565, 283 Cal.Rptr. 483.) Thus, the question of whether a parent has standing to raise sibling visitation issues, as opposed to reunification issues, was not directly addressed by Elizabeth M. Furthermore, in Elizabeth M., the children ultimately joined the parent in raising the sibling visitation issues (id. at p. 558, 283 Cal.Rptr. 483), thus the discussion of parental standing was unnecessary as it related to sibling visitation. In the instant case, the children have not joined their mother on appeal.
In conclusion, we agree with Frank L. and adopt its holding: A parent must show that counsel's alleged conflict of interest actually affected the parent's interests. In this case, the mother fails to make that showing. The mother notes that reunification with her daughters remains pending, therefore "her interests are significantly intertwined with theirs." That link is far too tenuous to support standing. Just because the mother still has rights in relation to her daughters, that does not give her standing to appeal every ruling that involves her daughters without some showing that her personal interests were affected. (Frank L., supra, 81 Cal.App.4th at p. 703, 97 Cal.Rptr.2d 88.)
Notably, during the pendency of the instant proceeding, section 366.26, subdivision (c)(1) was amended effective 2002 to include a fifth enumerated exception to the adoption requirement relating to sibling relationships. Thus, adoption shall now be ordered "unless the court finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child" because "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E).)
The mother persuasively argues that this new sibling relationship exception probably renders the standing issue moot. Because sibling relationships are now a statutory exception to adoption, those relationships directly impact the parent's interest in reunification, an interest that can be kept alive merely by avoiding adoption.
However, the new sibling relationship exception was not in effect at the time of the section 366.26 hearing in this case, and it does not appear to be retroactive. "`Whether a statute should apply retrospectively or only prospectively is, in the first instance, a policy question for the legislative body enacting the statute.' [Citation.] Although statutes `are generally presumed to operate prospectively and not retroactively,' this presumption is rebuttable. [Citation.] `[W]hen the Legislature clearly intends a statute to operate retrospectively, we are obliged to carry out that intent unless due process considerations prevent us.' [Citation.] We may infer such an intent from the express provisions of the statute as well as from extrinsic sources, including the legislative history. [Citation.]" (Preston v. State Bd. of Equalization (2001) 25 Cal.4th 197, 221-222, 105 Cal.Rptr.2d 407, 19 P.3d 1148.) The mother points to nothing indicating that the Legislature intended the new sibling relationship exception to be retroactive, and we can find nothing. Therefore, the mother still lacks standing to raise the sibling visitation issues in this case.

*481 2. Merits

Assuming for the sake of argument that the mother had standing to raise the sibling visitation issue, her arguments would fail on their merits.
First, the mother argues that the trial court erred by failing to consider and order sibling visitation. However, the court had no authority to order sibling visitation. Section 366.29, subdivision (a) requires the consent of the adoptive parents prior to ordering post-adoption visitation. And in this case, the adoptive parents indicated that they did not want Daniel visiting his family.
Second, the mother argues that counsel was ineffective. This argument is based on section 317.5, which provides that "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." Although this right is merely statutory, it has been interpreted in substantially the same manner as the constitutional right to the effective assistance of counsel. (See In re Kristin H. (1996) 46 Cal.App.4th 1635, 1662, 1667-1668, 54 Cal.Rptr.2d 722.) Thus, the appellants must show that counsel failed to perform as expected of a reasonably competent juvenile dependency attorney and that it is reasonably probable that a more favorable result would have been reached absent the error. (Id. at pp. 1667-1668, 54 Cal.Rptr.2d 722.)
Initially, counsel did not perform incompetently by failing to pursue sibling visitation. As noted above, in light of the adoptive parents' explicit rejection of visitation, post-adoption visitation was impossible.
Next, assuming for the sake of argument that counsel performed incompetently by representing multiple conflicting interests, there is no reasonable probability that independent counsel would have made a difference in the outcome. Section 366.26, subdivision (c)(1) makes adoption mandatory unless certain specifically enumerated exceptions apply. At the time of the section 366.26 hearing in this case, there were only four enumerated exceptions to the adoption requirement, and none of them included sibling visitation. Thus, at the time of the section 366.26 hearing in this case, it would have been improper to even consider sibling visitation when making the adoption decision. (See Cliffton B., supra, 81 Cal.App.4th at pp. 426-27, 96 Cal.Rptr.2d 778.) As such, regardless of who represented the children, the result would have been the same: Daniel would have been placed for adoption.
Even if we were to apply the new sibling relationship exception to adoption, we would still find no prejudice. The sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship. Furthermore, the language focuses exclusively on the benefits and burdens to the adoptive child, not the other siblings. The court is specifically directed to consider the best interests of the adoptive child, not the siblings, and must ultimately determine whether adoption would be detrimental to the adoptive child, not the siblings.
In this case, there is ample evidence that Daniel's sisters took care of him during his first months of life and were concerned about him throughout the proceedings. However, Daniel was in foster care during most of his short life and easily bonded with those caretakers. Daniel even seemed disinterested in his sisters during their visits, preferring to play with *482 toy trucks rather than with his sisters. Under the circumstances, we see no reasonable possibility that an independent counsel would have convinced the court that there was a compelling reason to conclude that termination of parental rights would be detrimental to Daniel due to the loss of the sibling relationships.[2]

DISPOSITION
The judgment is affirmed.
I concur: WARD, J.
RAMIREZ, P.J.
I concur with the result achieved in the lead opinion. I write separately to elucidate the apparent conflict between the instant opinion, with which I agree, and In re Elizabeth M. (1991) 232 Cal.App.3d 553, 283 Cal.Rptr. 483 (Elizabeth M.), with which I also agreed. In the first instance, as pointed out by the majority, the facts in Elizabeth M. distinguish it from this case. For example, with respect to the issue of independent counsel, the children in that case themselves appealed, asserting their right thereto. Therefore, whether the father had standing to raise the issue on their behalf was irrelevant and our conclusion on the issue there is dicta. (Id. at p. 565, 283 Cal.Rptr. 483.) Further, I have, after additional reflection, determined not only that the conclusion is dicta, but to the extent that it can be said to espouse the notion that parents have standing on appeal to raise the issue of failure to provide independent counsel for their children in every instance, it is incorrect dicta. As the majority here correctly concludes, in order to have standing to raise an issue on appeal, a parent must demonstrate that the issue affects that parent's interests, and not merely the child's. (In re Frank L. (2000) 81 Cal.App.4th 700, 703, 97 Cal. Rptr.2d 88.) The analysis in Elizabeth M. is lacking in this regard, merely citing In re Patricia E. (1985) 174 Cal.App.3d 1, 219 Cal.Rptr. 783, without mentioning the limitations to parental standing inherent in that decision.
In addition, in Elizabeth M., we gave the appearance of considering the father's claim that his children's rights were violated by a failure to order sibling visitation. (Elizabeth M., supra, 232 Cal.App.3d at p. 569, 283 Cal.Rptr. 483.) Again, to the extent that the Elizabeth M. opinion can be said to support parental standing on this issue (as with the independent counsel claim, the children there asserted the sibling visitation issue on their own behalf (id. at p. 564, 283 Cal.Rptr. 483)), I now believe that it is incorrect.
As Justice Frankfurter said in his dissent in Henslee v. Union Planters Bank (1949) 335 U.S. 595, 600 [69 S.Ct. 290, 293, 93 L.Ed. 259], "wisdom too often never comes, and so one ought not to reject it merely because it comes late." Since I now realize that the analysis in Elizabeth M. was lacking, "I shall not compound error by pushing that decision still farther." (Henslee v. Union Planters Nat. Bank & T. Co., supra, 335 U.S. at p. 600, 69 S.Ct. 290 (dis. opn. of Frankfurter, J.).)
NOTES
[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.
[2] Daniel has offered additional evidence in the form of an affidavit from his appellate counsel indicating that the adoptive mother, the social worker, and the siblings' trial counsel have all agreed to arrange for sibling visitation. This evidence, if true, further proves that there has been no prejudice. Regardless, because this information is unnecessary to the resolution of this appeal and would require further delays to allow the mother an opportunity to respond, we deny the minor's motion to receive additional evidence.