[No. S111138. July 7, 2003.]

In re CELINE R. et al., Persons Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and
Respondent, v.
MARY M. et al., Defendants and Respondents;
CRYSTAL M. et al., Appellants.

## COUNSEL

John L. Dodd, under appointment by the Supreme Court, for Appellants.

B. C. Barmann, Sr., County Counsel, and Susan M. Gill, Deputy County Counsel, for Plaintiff and Respondent.

John J. Sansone, County Counsel (San Diego), Susan Strom, Chief Deputy County Counsel, Gary C. Seiser, Deputy County Counsel; and Ruth Sorensen for California State Association of Counties as Amicus Curiae on behalf of Plaintiff and Respondent.

No appearance for Defendants and Respondents.

William Wesley Patton for Whittier Law School Legal Policy Clinic as Amicus Curiae.

## OPINION

CHIN, J.—In this case, three young children have been declared dependants of the juvenile court, and efforts to reunify them with their parents have failed. The time has come to establish and implement a permanent plan for them. At this stage of the proceedings, if an appropriate adoptive family is or likely will be available, the Legislature has made adoption the preferred choice. (Welf. & Inst. Code, § 366.26, subds. (b), (c).)[1] If it is likely the child will be adopted, the court must choose that option—and as a result terminate the natural parents' parental rights—unless it "finds a compelling reason for determining that termination would be detrimental to the child due to one or more" of specified circumstances. (§ 366.26, subd. (c)(1).)

Effective January 1, 2002, the Legislature added "substantial interference with a child's sibling relationship" to the circumstances that may permit the court to choose something other than adoption. (§ 366.26, subd. (c)(1)(E), added by Stats. 2001, ch. 747, § 3.) We must decide whether this new provision requires the court to consider the interests of all the siblings or only detriment to the specific child in question. We must also decide under what circumstances the court must appoint separate counsel for each child.

We conclude that the court may reject adoption under this sibling relationship provision only if it finds adoption would be detrimental to the child whose welfare is being considered. It may not prevent a child from

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

being adopted solely because of the effect the adoption may have on a sibling. ■ We also conclude that the court may appoint a single attorney to represent all of the siblings unless, at the time of appointment, an actual conflict of interest exists among them or it appears from circumstances specific to the case that it is reasonably likely an actual conflict will arise. After the initial appointment, the court must relieve counsel from the joint representation when, but only when, an actual conflict of interest arises. Finally, we conclude that any error here in not relieving counsel from representing all three children was harmless because it is not reasonably probable the result would have been different had the court done so. Accordingly, we affirm the judgment of the Court of Appeal.

## I.   FACTS AND PROCEDURAL HISTORY

This appeal involves three children: siblings Celine R., now five years old, and Angel R., now four years old, and their half sister, Crystal M., now 10 years old. The three have the same mother, but Crystal has a different father. In August 2000, the juvenile court adjudged them dependents of the court and removed them from parental custody after law enforcement agents discovered a methamphetamine laboratory in the family home. By the beginning of September 2000, Crystal was placed with a maternal aunt, while Celine and Angel were placed with a paternal uncle and his long-term girlfriend.

In April 2001, after efforts to reunify the family had failed, the court ordered Crystal into long-term foster care, and she continued to live with her maternal aunt. The court set a hearing under section 366.26 to select and implement a permanent plan for Celine and Angel. The hearing was originally scheduled for August 2001, but the Kern County Department of Human Services (Department) requested a continuance to search for a prospective adoptive home. The court continued the hearing until late February 2002.

In its supplemental report prepared shortly before the hearing, the Department advised the court that the paternal uncle and his girlfriend had agreed to adopt Celine and Angel. Angel did not understand the concept of adoption, but Celine said she wanted to be adopted. She understood adoption to mean her uncle and his girlfriend would be her legal parents and she would live with them until she was 18. The report concluded that adoption with them was the best permanent plan for Celine and Angel, and it recommended termination of parental rights.

On February 25, 2002, the court held the hearing to choose a permanent plan for Celine and Angel. Counsel for the parents indicated that the parents did not oppose termination of parental rights and the proposed adoption by the father's brother and the girlfriend. Counsel for the three children,

however, expressed concerns, especially in light of the recent statutory change regarding the sibling relationship. She stated that she had unsuccessfully tried to contact the paternal uncle and girlfriend regarding Celine and Angel. She had learned from Crystal's aunt that visitation was no longer occurring between Crystal and the other two. She spoke with Crystal, "and Crystal would be very hurt and very saddened if her siblings were adopted by other people and she became separated from her sibling group totally." She asked the court to continue the matter again and order a bonding study, because she was concerned there might be "long-term emotional interests that could really be in jeopardy, especially with Crystal who is older than these kids. . . . And her caregiver has concerns about how she would feel if her brother and sister were adopted." The attorney for the father noted that the children had been separated since September 2000, about a year and a half earlier. The court noted, and counsel for the children agreed, that even if the court did not terminate parental rights and permit the adoption, the children would still not be able to live together. But counsel was concerned that the children should visit with each other.

At this point, counsel for the children stated that "maybe the court should allow me to conflict out on Celine and Angel, then I could represent Crystal. [¶]. . .[T]his presents a real problem when we are dividing up children and I attempt to represent all three because I know probably going to adoption, being secure, having permanency is really what's necessary for all of the kids, and we have a very permanent plan for two of the kids. . . . They are all young. I don't know if there is that kind of bonding that would scar these little kids never seeing their sister again." The court asked the social worker whether there had been sibling visits. The social worker stated that he was informed the last visit had been in December 2001, but there had been visits before that time. The court noted that the practical consequences of its decision were that it "could order sibling visits if they are in long-term foster or long-term guardianship. Whereas, if these two are adopted, . . . [t]he court is out of it." The court interpreted the new code section as focusing on the two children being considered for adoption rather than the older sibling. It noted that those two had not "lived with the older sibling since they were infants and they would not remember her; they would not have any emotional attachment [any] more than they would with any other child or one of their little cousins or something." Accordingly, the court denied another continuance.

The court then terminated parental rights and referred Celine and Angel to the county adoption agency for adoptive placement. It set the matter for another hearing the following August and ordered visits among the three siblings in the meantime. Counsel for the children, but not the parents, filed a notice of appeal.

The Court of Appeal affirmed the orders terminating parental rights. It held that section 366.26, subdivision (c)(1), and its exceptions pertained to Celine and Angel, not Crystal. It also found the juvenile court did not abuse its discretion in denying a continuance. Finally, it held that any error in not relieving counsel from representing all three children was harmless.

We granted the children's petition for review to decide (1) whether the new sibling relationship exception obligates the court to consider the interests of all the siblings or only those being considered for adoption, and (2) under what circumstances the court must appoint separate counsel for separate siblings.[2]

## II. DISCUSSION

### A. *The Sibling Relationship Exception*

California has a comprehensive statutory scheme establishing procedures for the juvenile court to follow when and after a child is removed from the home for the child's welfare. (§ 300 et seq.; see generally *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247–250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307 [19 Cal.Rptr.2d 544, 851 P.2d 826].) When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family. (*Cynthia D. v. Superior Court, supra,* at pp. 248–249.) In this case, those efforts have failed. When that occurs, "the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan. (§ 366.21, subd. (g).)" (*Id.* at p. 249.) This appeal concerns the section 366.26 hearing, also called a permanency planning hearing (*In re Marilyn H., supra,* at p. 298, fn. 2), that was held in February 2002.

"Once reunification services are ordered terminated, the focus shifts to the needs of the child for permanency and stability." (*In re Marilyn H., supra,* 5 Cal.4th at p. 309.) "A section 366.26 hearing . . . is a hearing specifically designed to select and implement a permanent plan for the child." (*Id.* at p. 304.) It is designed to protect children's "compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a

---

[2] The Department also argues that Crystal lacks standing to appeal the termination of parental rights as to her siblings. The Court of Appeal declined to decide the question, and it is not within the scope of our grant of review. Accordingly, we do not decide it either. (Cal. Rules of Court, rule 29.)

full emotional commitment to the child." (*Id.* at p. 306.) "The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful." (*Id.* at p. 307.)

■ The court has four choices at the permanency planning hearing. In order of preference the choices are: (1) terminate parental rights and order that the child be placed for adoption (the choice the court made here); (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care. (§ 366.26, subd. (b).) Whenever the court finds "that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption." (§ 366.26, subd. (c)(1).) ■ The circumstance that the court has terminated reunification services provides "a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more" of specified circumstances. (*Ibid.*) The Legislature has thus determined that, where possible, adoption is the first choice. "Adoption is the Legislature's first choice because it gives the child the best chance at [a full] emotional commitment from a responsible caretaker." (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348 [93 Cal.Rptr.2d 644].) "Guardianship, while a more stable placement than foster care, is not irrevocable and thus falls short of the secure and permanent future the Legislature had in mind for the dependent child." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1344 [63 Cal.Rptr.2d 562].)

We thus see that if the child is adoptable—and no one disputes that Celine and Angel are—adoption is the norm. Indeed, the court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child. ■ The specified statutory circumstances—actually, *exceptions* to the general rule that the court must choose adoption where possible—"must be considered in view of the legislative preference for adoption when reunification efforts have failed." (*In re Jasmine D., supra,* 78 Cal.App.4th at p. 1348.) At this stage of the dependency proceedings, "it becomes inimical to the interests of the minor to heavily burden efforts to place the child in a permanent alternative home." (*Cynthia D. v. Superior Court, supra,* 5 Cal.4th at p. 256.) The statutory exceptions merely permit the court, in *exceptional circumstances* (*In re Jasmine D., supra,* at pp. 1348–1349), to choose an option other than the norm, which remains adoption.

Until recently, section 366.26, subdivision (c)(1), contained four exceptions to the normal requirement of adoption. Effective January 1, 2002, the

Legislature added a fifth exception, the one at issue here: "There would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(E); Stats. 2001, ch. 747, § 3.) This new exception now permits the court to consider the sibling relationship in deciding whether a compelling reason exists to choose something other than adoption.

At the hearing in this case, counsel for the children expressed concern that Crystal might be hurt and saddened if Celine and Angel were adopted. The issue before us is whether the sibling relationship exception permits the court to consider whether adoption would be detrimental, not to the children being considered for adoption, but to a sibling. The trial court and Court of Appeal in this case held that the new exception permits the court to consider possible detriment to the child being considered for adoption, but not detriment to a sibling. As the Court of Appeal explained, "Crystal was not the subject of the termination hearing. . . . The court had previously selected for her a permanent plan of long-term foster care. Section 366.26, subdivision (c)(1) and its exceptions pertain to the child for whom the court is conducting the hearing to select and implement a permanent plan. The purpose of the February 2002 hearing was to select and implement a permanent plan for Celine and Angel. In order for the court to refrain from selecting adoption as the permanent plan for Celine and Angel, given their adoptability, it would have to 'find a compelling reason for determining that termination would be detrimental to the child,' in this case, them. (§ 366.26, subd. (c)(1).)"

We agree with the courts below that the sibling relationship exception permits the trial court to consider possible detriment to the child being considered for adoption, but not a sibling of that child. The plain language of the new exception compels this conclusion. Although it concerns the sibling relationship in general, the statute continually refers to that relationship's impact on the child being considered for adoption, not the impact on the sibling or anyone else. (§ 366.26, subd. (c)(1)(E).) "[T]he language focuses exclusively on the benefits and burdens to the adoptive child, not the other siblings. The court is specifically directed to consider the best interests of the adoptive child, not the siblings, and must ultimately determine whether adoption would be detrimental to the adoptive child, not the siblings." (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813 [121 Cal.Rptr.2d 475].) Nothing in the statute suggests the Legislature intended to permit a court to not choose an adoption that is in the adoptive child's best interest because of the possible effect the adoption may have on a sibling.

Counsel for the children argues that the "court must examine the relationship among all the siblings in considering" the sibling relationship exception and "may not restrict its inquiry to the children at issue in the hearing before the court." In a way, this is correct. The sibling's relationship with the child is not irrelevant. Certainly, evidence of the sibling's relationship with the child and, if the sibling is articu late, perhaps of the sibling's views of that relationship, might be relevant as indirect evidence of the effect the adoption may have on the adoptive child. A nonadoptive sibling's emotional resistance towards the proposed adoption may also implicate the interests of the adoptive child. In an appropriate case, the court should carefully consider all evidence regarding the sibling relationship as it relates to possible detriment to the adoptive child. ■ But the ultimate question is whether adoption would be detrimental to the adoptive child, not someone else. This conclusion does not mean that the court must totally disregard the interests of the sibling or the significance of the sibling relationship when it orders adoption. When appropriate, the court can encourage the adoptive parents to agree to visits among the siblings although, as the court recognized in this case, it cannot require them to do so. (§ 366.29; Fam. Code, § 8714.7; see *In re Daniel H.*, *supra*, 99 Cal.App.4th at p. 812.)

## B. *Appointment of Separate Counsel for Separate Siblings*

The children argue that the trial court should have appointed a separate attorney for Crystal and another for Celine and Angel when their trial counsel expressed concern at the February 25, 2002, hearing about representing all three. "Where a child is not represented by counsel, the court shall appoint counsel for the child unless the court finds that the child would not benefit from the appointment of counsel. The court shall state on the record its reasons for that finding." (§ 317, subd. (c).) Here, the court did appoint counsel for the children, although just one for all three. The law has been somewhat uncertain regarding whether and under what circumstances separate siblings must have separate counsel.

The children do not argue that each child must always have his or her own attorney. We agree that the court should not automatically appoint separate counsel for separate children. In a dependency case, each parent generally has separate counsel. Another attorney represents the social services agency. Counsel for the children is the fourth attorney in the case. Thus, four attorneys appeared at the February 25, 2002, hearing of this case. If each child had separate counsel, matters could become unwieldy, especially when there are several children; so many attorneys could interfere with the need to resolve dependency questions expeditiously as well as fairly. For example, *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423 [124 Cal.Rptr.2d 891] (*Carroll*), discussed further below, involved seven children. Separate counsel

for each would have resulted in a total of 10 attorneys, which would have made the matter resemble complex litigation. In addition to the obvious inefficiencies of having so many attorneys—who might create scheduling difficulties and push the case in contradictory directions—and the serious draining of scarce public resources, separate counsel could also unnecessarily make siblings feel they are adversaries, which could harm their ability to provide mutual emotional support. Having a single attorney would also permit the children to consult with their attorney together rather than separately, which can be quite beneficial in the often intimidating environment of judicial proceedings. Children's interests are not always adversarial, and they should not always be treated as such.

On the other hand, sometimes the interests of siblings are so conflicting that they should have separate counsel. We must determine the exact standard for trial courts to apply when first appointing counsel and thereafter.

Some courts have held that the court must appoint separate counsel for siblings only when an actual, not merely potential, conflict arises among them. (*In re Candida S.* (1992) 7 Cal.App.4th 1240, 1252 [9 Cal.Rptr.2d 521]; *In re Richard H.* (1991) 234 Cal.App.3d 1351, 1367 [285 Cal.Rptr. 917].) Another said that there must be separate counsel whenever a "potential conflict of interest" exists. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 565 [283 Cal.Rptr. 483].) ▆ The relevant statute seems to require separate counsel only when an actual conflict exists. "Counsel for the child may be a district attorney, public defender, or other member of the bar, provided that the counsel does not represent another party or county agency whose interests *conflict* with the child's." (§ 317, subd. (c), italics added.) As pointed out in *In re Richard H.*, *supra*, at page 1367, the original bill that became the revised section 317 said, "provided that the counsel does not represent another party or county agency whose interest *may conflict* with the minor's." (Sen. Bill No. 243 (1987–1988 Reg. Sess.) § 22, p. 23, as introduced Jan. 26, 1987, italics added.) A later amendment deleted the word "may," and the language became "provided that the counsel does not represent another party or county agency whose interests conflict with the minor's." (Sen. Bill No. 243, *supra*, § 21, p. 23, as amended in Assembly July 9, 1987.) Thus, "may conflict," which would seem to include a potential conflict, became "conflict," which seems to require an actual conflict.

The California Rules of Professional Conduct (rules) appear to differ slightly from section 317. Rule 3-310(C) provides that, without each client's written consent, an attorney shall not: "(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or ¶ (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict. . . ." Thus, this provision

states that at the outset, an attorney may not accept representation if there is a *potential* conflict; it does not require an actual conflict. In *Carroll, supra,* 101 Cal.App.4th 1423, the court sought to reconcile the apparent tension between section 317 and rule 3-310(C).

The *Carroll* court first held that an attorney must withdraw from an *existing* representation only when an actual conflict arises among multiple clients. (*Carroll, supra,* 101 Cal.App.4th at p. 1428.) Noting the language of rule 3-310, it then considered when an attorney must refuse to *accept* representation of multiple clients at the outset due to a potential conflict among them. It noted that there may always be at least a "theoretical *potential* conflict among" siblings. (*Carroll, supra,* at p. 1429.) "This theoretical potential conflict exists from the commencement of a multi-sibling dependency proceeding because of the possibility reunification will be unsuccessful and the siblings' interests may differ at the permanent plan stage; therefore, in multiple sibling cases, it can be argued that separate counsel must be appointed for each at the commencement of the proceedings. On the other hand, dependency proceedings often result in reunification and even if they do not, multi-sibling permanent plans do not necessarily involve an actual conflict. Although a theoretical potential conflict of interest exists in each multiple sibling dependency proceeding, it appears this potential conflict is theoretical, not realistic. Therefore, appointment of separate counsel for each sibling at the commencement of the dependency proceeding would in most cases result in an unnecessary duplication of effort and resources." (*Ibid.*)

"A degree of tension exists between Rule 3-310, which prohibits an attorney from accepting new representation of multiple clients when a potential conflict of interest exists among the clients, and section 317, subdivision (c), which prohibits representation of a minor in a dependency proceeding and another person or agency whose interests conflict with the minor's. Rule 3-310 refers to potential conflict and section 317, subdivision (c) seems to contemplate an actual conflict. We believe, however, that in the dependency context the two concepts can be reconciled by a rule that an attorney may not represent multiple clients if an actual conflict of interest between clients exists and may not accept representation of multiple clients if there is a reasonable likelihood an actual conflict of interest between them may arise. By interpreting the Rule 3-310 concept of potential conflict to mean, at least in the dependency context, a reasonable likelihood an actual conflict will arise, it is possible to reconcile the importance of independent representation with the practicality of not overwhelming the dependency system when unnecessary." (*Carroll, supra,* 101 Cal.App.4th at pp. 1429–1430.)

Counsel for the children urges us "to adopt the formulation in *Carroll* as both consistent with existing law and workable in the dependency context." We agree that the *Carroll* court appropriately reconciled section 317 and rule 3-310, as well as the sometimes contradictory needs to assure that everyone is properly represented but not to overburden the dependency system or unnecessarily suggest that siblings are adversaries. ▇ When first appointing counsel in a dependency matter, the court may generally appoint a single attorney to represent all the siblings. It would have to appoint separate attorneys if, but only if, there is an actual conflict among the siblings or if circumstances specific to the case—not just the potential for conflict that inheres in all multisibling dependency cases—present a reasonable likelihood an actual conflict will arise. If these specific circumstances exist, the court should appoint separate counsel at the outset rather than await an actual conflict and the possible disruption a later reappointment may cause. After the initial appointment, the court will have to relieve counsel from multiple representation if, but only if, an actual conflict arises.

Nothing in the record indicates there was a reasonable likelihood an actual conflict would arise among the siblings when the court first appointed counsel in this matter. The children do not argue otherwise. The children, however, argue that the court was required to appoint separate counsel at the February 25, 2002, hearing when counsel cited the new sibling relationship exception of section 366.26, subdivision (c)(1)(E), and expressed concern that the adoption of Celine and Angel would have a negative impact on Crystal. In a similar situation, the *Carroll* court concluded that groups of siblings that would not be kept together may require separate counsel. (*Carroll, supra,* 101 Cal.App.4th at pp. 1430–1431.) Now that we have clarified the meaning of the sibling relationship exception, it is not clear whether this precise situation will rearise or how our interpretation of that exception would affect this question. But we need not decide whether the court erred in not relieving counsel, for any error was harmless.

Citing *In re Patricia E.* (1985) 174 Cal.App.3d 1, 9 [219 Cal.Rptr. 783], and criminal cases, the children argue that harmless error analysis is inappropriate in cases of improper joint representation. We disagree. It is true that error in having one attorney represent multiple defendants in a criminal case, once established, is generally not susceptible of harmless error analysis (see *People v. Mroczko* (1983) 35 Cal.3d 86 [197 Cal.Rptr. 52, 672 P.2d 835]), but the analogy to criminal cases is inapt. In *In re Richard E.* (1978) 21 Cal.3d 349 [146 Cal.Rptr. 604, 579 P.2d 495], we held that error in not appointing counsel for the child as well as for the parents and the social agency was subject to harmless error analysis. "Failure to appoint counsel in the context of a freedom from parental custody and control proceeding is dissimilar to denial of the fundamental right to counsel where one is charged with crime or juvenile misconduct. [Citation.] None of the personal deprivations flowing

from denial of counsel in juvenile court proceedings are present here. [Citations.] Accordingly, failure to appoint counsel for a minor in a freedom from parental custody and control proceeding does not require reversal of the judgment in the absence of miscarriage of justice." (*Id.* at p. 355.)

Other than *In re Patricia E., supra,* 174 Cal.App.3d 1, which followed *People v. Mroczko, supra,* 35 Cal.3d 86, Court of Appeal decisions have generally applied this harmless error rule to error in not appointing separate counsel for separate siblings. In *In re Elizabeth M., supra,* 232 Cal.App.3d at pages 566–567, the court noted that a defendant's right to counsel in criminal cases is a fundamental constitutional right, but the child's right to counsel in a dependency case is solely statutory. Accordingly, it concluded "that the *Richard E.* standard [*In re Richard E., supra,* 21 Cal.3d 349] applies to evaluating error in failing to appoint independent counsel for children with varying interests. We thus determine whether the record reflects a miscarriage of justice in the failure to appoint separate counsel." (*In re Elizabeth M., supra,* at p. 568; accord, *In re Candida S., supra,* 7 Cal.App.4th at p. 1252.)

We conclude that the failure to appoint separate counsel for separate siblings is subject to the same harmless error standard as error in not appointing counsel for the children at all. We add another reason criminal cases are inapt. In a criminal case, reversal of a criminal judgment is virtually always in the defendant's best interest. The situation in a dependency case is often different. Reversal of an order of adoption, for example, might be *contrary* to the child's best interest because it would delay and might even prevent the adoption. After reunification efforts have failed, it is not only important to seek an appropriate permanent solution—usually adoption when possible—it is also important to *implement* that solution reasonably promptly to minimize the time during which the child is in legal limbo. A child has a compelling right to a stable, permanent placement that allows a caretaker to make a full emotional commitment to the child. (*In re Marilyn H., supra,* 5 Cal.4th at p. 306.) Courts should strive to give the child this stable, permanent placement, and this full emotional commitment, as promptly as reasonably possible consistent with protecting the parties' rights and making a reasoned decision. The delay an appellate reversal causes might be contrary to, rather than in, the child's best interests. Thus, a reviewing court should not mechanically set aside an adoption order because of error in not giving that child separate counsel; the error must be prejudicial under the proper standard before reversal is appropriate.

Other than the general reference to a miscarriage of justice, the cases have not stated the exact harmless error test. (See, e.g., *In re Daniel H., supra,* 99 Cal.App.4th at p. 813 [finding both no "reasonable probability" and no "reasonable possibility" of prejudice].) The California Constitution prohibits a

court from setting aside a judgment unless the error has resulted in a "miscarriage of justice." (Cal. Const., art. VI, § 13.) We have interpreted that language as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) We believe it appropriate to apply the same test in dependency matters. ▉ A court should set aside a judgment due to error in not appointing separate counsel for a child or relieving conflicted counsel only if it finds a reasonable probability the outcome would have been different but for the error. We disapprove of anything in *In re Patricia E., supra,* 174 Cal.App.3d 1, that is inconsistent with this conclusion.

Attorneys who believe the trial court is erroneously compelling them to represent more than one child may, like the attorney in *Carroll, supra,* 101 Cal.App.4th 1423, seek writ relief in the Court of Appeal rather than await any appellate remedy. But attorneys should do so only if they believe it is in their clients' best interest. Sometimes the additional delay that seeking writ relief might cause could harm the children. ▉ An attorney for a child is "charged in general with the representation of the child's interests" (§ 317, subd. (e)) rather than always seeking a result that counsel thinks is legally correct regardless of whether that result is in the child's best interest.

As did the Court of Appeal, we find harmless any error in not relieving counsel. The parents did not oppose the proposed adoption by the father's brother. If the court had relieved counsel for the children because an actual conflict had arisen, it would not necessarily have had to appoint new counsel for Celine and Angel. ▉ The court need not appoint counsel—or in this situation replacement counsel—if it finds the appointment would not benefit the child and states on the record its reasons for this finding. (§ 317, subd. (c).) At this late stage of the proceedings, after everything that had already been done, the court might have found that appointing new counsel, and continuing the permanency planning hearing yet again, would, by delaying the adoption, have been detrimental rather than beneficial to Celine and Angel. (See *In re Jesse C.* (1999) 71 Cal.App.4th 1481 [84 Cal.Rptr.2d 609] [court may relieve counsel from further representation when such representation would no longer benefit the child].)[3] If it had made this finding, and stated its reasons on the record, the court could have relieved counsel and

---

[3] When *In re Jesse C., supra,* 71 Cal.App.4th 1481, was decided, section 317, subdivision (c), required the appointment of counsel when "it appears to the court that the minor would benefit from the appointment of counsel." (See *In re Jesse C., supra,* at p. 1486.) Today, the court must appoint counsel unless it finds the child would not benefit from such appointment and states its reasons for the finding. Thus, it is now presumed the child will benefit from having counsel. Courts should be very cautious in finding that counsel would not benefit the child.

simply ordered the adoption and termination of parental rights without appointing new counsel for Celine and Angel. Doing so would not have affected the outcome.

Even if Celine and Angel had had separate counsel, that counsel would either have argued in favor of the adoption, which obviously would not have affected the outcome, or against it, as counsel here did in effect. We find it very unlikely that separate counsel would have convinced the court to make a different ruling when joint counsel failed. This is especially true given our conclusion that the sibling relationship exception permits the court to consider only possible detriment to Celine and Angel. Reflecting the Legislature's preference for adoption when possible, the "sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a 'compelling reason' for concluding that the termination of parental rights would be 'detrimental' to the child due to 'substantial interference' with a sibling relationship." (*In re Daniel H.*, *supra*, 99 Cal.App.4th at p. 813, quoting § 366.26, subd. (c)(1).) Indeed, even if adoption would interfere with a strong sibling relationship, the court must nevertheless weigh the benefit to the child of continuing the sibling relationship against the benefit the child would receive by gaining a permanent home through adoption. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952–953 [124 Cal.Rptr.2d 688].)

The record discloses virtually no basis for the court to suspect the younger children felt such a bond with their older half sibling that they should not be adopted. Celine and Angel had lived with Crystal only a very short time when they were very young. When the children were placed in separate homes in September 2000, Celine was three years old and Angel less than two years old. They had been living separately from Crystal for a year and a half as of the February 2002 hearing. Given their age when separated from Crystal and the length of time they had already lived separately from her, the conclusion was virtually compelled that they had not been "raised with [Crystal] in the same home" and had not "shared significant common experiences or [had] existing close and strong bonds with [her]" (§ 366.26, subd. (c)(1)(E)), or at least that such bonds should not prevent them from gaining a permanent home through adoption. Even counsel for the children did not suggest adoption would be detrimental to Celine and Angel. Her concerns regarded Crystal. Moreover, it was undisputed at the hearing that even if Celine and Angel were not adopted, there were no prospects of their living with Crystal. Under the circumstances, the trial court reasonably discounted the importance of the sibling relationship to Celine and Angel, even if it was important to the older child, and, as does the Legislature generally, it valued more their "ability to belong to a family." (See *In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 953.) We find no reasonable probability the court would have chosen a

different permanent plan for Celine and Angel even if it had relieved counsel from representing all three children.

## III. CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J. and Brown, J., concurred.

**MORENO, J.**—I agree with the reasoning and results of the majority opinion. The majority holds that appointment of separate counsel for siblings is required only when there is "a reasonable likelihood an actual conflict will arise" in the multiple representation. (Maj. opn., *ante*, at p. 57.) The majority concludes that no such reasonable likelihood existed at the time counsel was appointed in the present case. The majority further holds that after initial appointment, counsel should only be relieved of multiple representation if an actual conflict arises. The majority declines to decide whether such actual conflict arose in this case, concluding that even if the trial court erred, its error was harmless.

In my view, the trial court did err in failing at the February 25, 2002, hearing to relieve the children's counsel from her representation of all the siblings. As counsel recognized, there appeared to be a conflict between representing the interests of the older sibling, who had an emotional stake in preserving the sibling relationship and for whom there was no adoption plan, and the younger children, who were infants when they last had contact with the older sibling and for whom adoption was contemplated. (See *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1430–1431 [124 Cal.Rptr.2d 891].) I agree that the error was harmless for the reasons articulated in the majority opinion.

Had this conflict been foreseen at the time of counsel's appointment, then there would have been grounds for initially appointing separate counsel. One of the reasons why it was not foreseen is that the sibling exception to the adoption statute, enacted in 2001 (Stats. 2001, ch. 747, § 3) and codified at Welfare and Institutions Code section 366.26, subdivision (c)(1)(E), had not yet been legislated. A case in which counsel is appointed under circumstances similar to the present case, but after section 366.26, subdivision (c)(1)(E)'s enactment, may present "a reasonable likelihood an actual conflict will arise" and require appointment of separate counsel.

Kennard, J., concurred.