Filed 12/16/14  In re Isabel G. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re ISABEL G., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B257080 (Super. Ct. No. J069360) (Ventura County) |
| VENTURA COUNTY PUBLIC SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. ANGELICA N. et al., Defendants and Appellants. | |

Angelica N. (Mother) and Jaime G. (Father) appeal from a June 4, 2014 order terminating their parental rights to Isabel G. and freeing the child for adoption. (Welf. & Inst. Code, § 366.26.)[1]  Mother contends that substantial evidence does not support the trial court's finding that Isabel was adoptable (*id.*, subd. (c)(1)(B)) and that exceptions based upon a beneficial parent-child relationship (*id.*, subd. (c)(1)(B)(i))

---

[1] All statutory references are to the Welfare and Institutions Code.

and a strong sibling relationship (*id.*, subd. (c)(1)(B)(v)) preclude the child's adoption. We affirm.

FACTUAL AND PROCEDURAL HISTORY

On May 1, 2013, a passerby found Isabel wandering in the streets, alone, barefoot and dirty. The passerby took Isabel to the Oxnard Police Department. When Mother returned home and found Isabel missing, she contacted the police department and was invited to come to the police station to pick her up. When she arrived, Mother was arrested for being under the influence of a controlled substance and child endangerment. Isabel and her four half-siblings were detained by Ventura County Human Services Agency (HSA).

The detention report states that Mother began using methamphetamine and heroin in 2001. Although she was sober for a while, Mother admitted she "slipped" again about five months before she was arrested and resumed daily use of methamphetamine and heroin. On the day Isabel was detained, Father was in federal prison. He is not expected to be released until 2018. Richard M., the father of Isabel's four half-siblings, was in county jail.

An amended dependency petition filed on May 31, 2013, charges the parents of the children with failing to protect them (§ 300, subd. (b)) and failing to provide support (*id.*, subd. (g)). The trial court detained the children and ordered reunification services and supervised visits for Mother and Richard M. The decision about providing services to Father was deferred to the six-month review hearing.

At the six-month review hearing, HSA reported that Isabel and her half-siblings had been placed with S. M., the paternal aunt of Isabel's half-siblings. HSA noted Mother did not do well with reunification services. She failed to maintain contact with the social worker, failed two drug treatment programs and missed drug tests for seven months. Mother did not keep to the visitation schedule and was frequently late when she did show up to spend time with Isabel. HSA reported Father was still in federal prison and that although messages had been left for him, he never made contact with Isabel. Although S. M. was willing to be the guardian of Isabel's

2

four half-siblings if reunification with their father failed, she was not willing to provide a permanent home for Isabel because the child is not related to her.

The trial court terminated services for Mother and bypassed services to Father and set the matter for a permanent plan hearing.  (§ 366.26.)

By the time of the section 366.26 hearing on May 7, 2014, Mother's circumstances were worse.  She had been discharged from another treatment program because she was caught in possession of drugs.  She was homeless and tested positive for opiates.  Her supervised visits with Isabel were minimal and when they occurred, they were unproductive.  A prospective adoptive parent was identified for Isabel and her transition into this home was underway.  The report said Isabel was happy and was adjusting to her new home.  The adoption worker reported that Isabel was adoptable and said that even if the placement with the prospective adoptive parent failed, it was likely Isabel could be placed with another prospective adoptive parent.  Contact between Isabel and her half-siblings would be established and maintained after the adoption.

The trial court found that Isabel was adoptable and concluded exceptions to the rule requiring termination of Mother's and Father's parental rights did not apply. The trial court terminated Mother's and Father's parental rights.  We review for substantial evidence in the record to support the trial court's factual findings and determine whether the trial court abused its discretion in concluding the exceptions to the rule requiring that Mother's and Father's parental rights be terminated were not proven or significant enough to compel a plan other than adoption.  (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1314-1315.)

*Adoptability*

Section 366.26, subdivision (c)(1)(B) requires the juvenile court to terminate parental rights if it finds by clear and convincing evidence that a child is likely to be adopted.  Before a hearing to terminate parental rights, the agency supervising the child must submit an adoption assessment.  (§ 366.21, subd. (i).)

3

HSA's May 27, 2014 adoption assessment satisfies all the requirements of section 366.21, subdivision (i). The report provides substantial evidence that Isabel is likely to be adopted because she is healthy, well-adjusted, and in June 2014 was transitioning easily into the custody of a prospective adoptive parent. Isabel has no unresolved issues concerning her physical or emotional health or special medical needs.

Mother argues that there is no substantial evidence to support a finding that Isabel was likely to be adopted in a reasonable time because: (1) the prospective adoptive parent had only cared for Isabel for three weeks and more time was needed to assess her suitability; (2) the prospective adoptive parent had not signed a contract guaranteeing that Isabel will continue to have contact with her half-siblings; and (3) HSA made no other efforts to identify a prospective adoptive parent.

"[T]he inquiry as to whether a child is likely to be adopted does not focus on the adoptive parents, but rather, on the child." (*In re Josue G.* (2003) 106 Cal.App.4th 725, 733.) HSA's section 336.26 report and the uncontradicted testimony of social worker Karin Penanhoat establish that Isabel is happy in the home of the prospective adoptive parent and that she already relies upon this caregiver for comfort and support. Penanhoat testified that the prospective adoptive parent not only supports the continuation of Isabel's relationship with her half-siblings, she is "adamant" that it continue.

Even if the foster parent is ineligible or unable to adopt Isabel, the juvenile court reasonably found Isabel is adoptable based on the overwhelming evidence in the record that she is in good physical, emotional, and developmental condition. "The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

4

*Parent-Child Beneficial Relationship*

When reunification fails and a child is likely to be adopted, parental rights must be terminated to pave the way for the Legislature's preference for a permanent plan of adoption. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573) There are six enumerated statutory exceptions to this rule that allow for an alternative to adoption if a compelling reason shows termination of parental rights would be detrimental to the child.

"Because a parent's claim to such an exemption is evaluated in light of the Legislature's preference for adoption, it is only in exceptional circumstances that a court will choose a permanent plan other than adoption. [Citation.]" (*In re Scott B.* (2010) 188 Cal.App.4th 452, 469.) Mother argues that the beneficial parent-child relationship exception precludes adoption. (§ 366.26, subd. (c)(1)(B)(i).) We disagree.

To establish the beneficial relationship exception, Mother must prove that she maintained regular visitation and contact with Isabel and that the benefits of continuing the parent-child relationship outweigh the benefits of adoption. (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 643 ["'frequent and loving contact'" not sufficient to establish beneficial parental relationship]; see *In re C.F* (2011) 193 Cal.App.4th 549, 554 [sporadic visitation not enough].) The court considers facts such as (1) the age of the child, (2) the portion of the child's life spent in the parent's custody, (3) the positive or negative effect of the interaction between the parent and the child, and (4) the child's particular needs. (*In re Helen W.* (2007) 150 Cal.App.4th 71, 81.) "A biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.]" (*In re Angel B.* (2002) 97 Cal.App.4th 454, 466.)

Here, the report submitted by HSA reflects that Mother's contact with Isabel was irregular and unproductive. At the six-month review hearing, Mother's contact with Isabel was described as "inconsistent." She missed many visitations and

5

was late to others.  Although HSA later noted Mother's contact became more regular and consistent, the visits did not demonstrate a close relationship of mother and child but instead suggested a relationship akin to that of a friend or distant relative.  The record shows Isabel would often not greet her mother and showed no distress when she left.  Mother failed to progress beyond supervised visits, failed to comply with the case plan, failed to deal with her addictions or obtain and keep housing.  During her visitations with Isabel she expressed more concern about her personal troubles than with meeting her daughter's need for affection, support and care.

But even if the regular contact/visitation element of the exception was arguably satisfied, there is no evidence that "severing the natural parent-child relationship would deprive [Isabel] of a *substantial*, positive emotional attachment such that [Isabel] would be *greatly* harmed.  [Citations.]"  (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 466.)  The trial court reasonably concluded that Mother's relationship with Isabel does not outweigh the permanency and stability of an adoptive placement that this child badly needs.  (*Id.*, at p. 468.)  "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself.  The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it."  (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038.)

*Sibling Relationship Exception*

Mother and Father contend substantial evidence compels a finding that terminating parental rights will interfere with Isabel's relationship with her siblings and that continuing the relationship outweighs the benefit of adoption.  We disagree.

Section 366.26, subdivision (c)(1)(B)(v) provides an exception to the preference for adoption when the court finds termination of parental rights would be detrimental to the child because "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the

6

child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

"Reflecting the Legislature's preference for adoption when possible, the 'sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption. It only applies when the juvenile court determines that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.' [Citations.]" (*In re Celine R.* (2003) 31 Cal.4th 54, 61.)

To establish the sibling exception Mother and Father must show Isabel has a significant relationship with her siblings, that ongoing contact with them is in her best interest, that termination of that contact would be detrimental and that this outweighs the benefits of permanence though adoption. (See *In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952 [the trial court must "balance the beneficial interest of the child in maintaining the sibling relationship, which might leave the child in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption and a new home would confer"].)

HSA concedes Isabel had a strong bond with her half-siblings and that separating her from her siblings will have an impact that may need to be addressed in counseling. But Isabel's half-siblings live with their paternal aunt who is unrelated to Isabel. Although she was willing to care for Isabel temporarily, the aunt is unwilling to be Isabel's adoptive parent or guardian. Thus although it is inevitable that Isabel and her half-siblings will not live together, it is notable that the prospective adoptive parent expressed a firm preference to maintain the sibling relationship and to facilitate visitation.

The trial court balanced the benefit of maintaining the sibling relationship, that would leave the children in a tenuous guardianship or foster home placement, against the sense of security and belonging adoption would confer. The trial court struck the balance in favor of adoption. It did not err.

7

The judgment (order) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BURKE, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

---

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

Bruce A. Young, Judge

Superior Court County of Ventura
_____

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant Angelica N.

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant Jaime G.

Leroy Smith, County Counsel, County of Ventura, Patricia McCourt, Assistant County Counsel, for Plaintiff and Respondent.