[No. D039951. Fourth Dist., Div. One. Sept. 13, 2002.]

STEVEN J. CARROLL, as Public Defender, etc., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY
et al., Real Parties in Interest.

**COUNSEL**

Steven J. Carroll, Public Defender, Jo Pastore and Virginia Henkels, Deputy Public Defenders, for Petitioner and for Real Parties in Interest Minors.

No appearance for Respondent.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Timothy A. Chandler, Alternate Public Defender, Roberto Quinones, Jr., and Erin K. Lehrter, Deputy Alternate Public Defenders, for Real Party in Interest Ramon C.

## OPINION

**McDONALD, J.**—Under California Rules of Professional Conduct, Rule 3-310 (Rule 3-310) an attorney may not *accept* a new representation of multiple clients when there exists a *potential* conflict of interest between those prospective clients, and must *withdraw* from an existing representation of multiple clients when an *actual* conflict of interest arises among those existing clients. (Rule 3-310(C)(1), (2).) With these fundamental precepts as guideposts, we examine whether and to what extent the Legislature's addition of new subdivision (c)(1)(E) to Welfare and Institutions Code section 366.26[1] requires the trial court to grant the motion by multiple minors' current attorney to be relieved as their counsel and to appoint new separate counsel for each minor.

### I

### BACKGROUND

#### A. *The Clients*

In 1999 section 300 petitions were filed by the San Diego County Health and Human Services Agency (Agency), alleging the seven minor children of Norma M. were within the jurisdiction of the juvenile court. The public defender was appointed as counsel for all of the minors. Deputy Public Defender Virginia Henkels appeared on behalf of all the minors.[2] The court sustained the petitions and entered dispositional orders removing custody of the minors from Norma and placing them in licensed foster care. Henkels continued to appear on behalf of and represent all of the minors throughout the following dependency proceedings. The Agency's assessments for Janet, Vanessa and Reyna (then six, five and three years of age, respectively), who were in the same placement,[3] concluded these minors were adoptable. The minors' caregiver was not interested in adopting the three girls but would consider legal guardianship. The assessments stated these three girls had lived with their other siblings while in Norma's custody but had not visited with their other siblings after they had been placed in their current foster home. The assessments concluded the minors would gain more from the stability of adoption than from ongoing contact with their siblings or parents,

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]At that time, Francisco was 10 years of age, Cynthia was nine, Adriana was six, Janet was three, Vanessa was two, Jazmin was one, and Reyna was a newborn.

[3]All of the minors were returned to Norma's custody in late 2000. However, in June 2001 the minors were removed from her custody and placed in out-of-home care pursuant to a section 387 petition.

and recommended termination of parental rights and pursuing adoption as the permanent plan for each.

The Agency's assessments for Francisco, Cynthia and Adriana (then 12, 11 and 8 years of age, respectively), who were placed together in the same foster home, concluded they were not adoptable because of their ages and the belief it would be detrimental to their well-being if they were separated from each other. They were doing well in their placement, and their current caregiver was willing to accept legal guardianship for each. These three minors were strongly bonded to Norma and preferred reunification to either adoption or guardianship.

The Agency's assessment for Jazmin (then three years old), who was placed in the same home as Francisco, Cynthia, and Adriana, concluded Jazmin was "very closely bonded" to Cynthia and Adriana. However, Jazmin was significantly developmentally delayed and her caregiver, although willing to undertake guardianship for Francisco, Cynthia, and Adriana, asked that Jazmin be placed in a setting that could better respond to Jazmin's need for constant supervision and attention. The social worker believed Jazmin might be adoptable and recommended that her case be continued for 120 days to complete a further adoptability assessment.

B.  *The Conflict of Interest*

At a February 2002 pretrial status conference, Henkels raised the issue of a conflict of interest regarding continued representation of the minors. On February 27, 2002, Henkels filed a written motion and declaration of conflict of interest, seeking to be relieved as counsel for all minors because of the conflict of interest. She averred that because the newly enacted sibling relationship provisions of section 366.26, subdivision (c)(1)(E)[4] require counsel to consider and advocate (on behalf of some of the minors) *against* adoption as a permanent plan while simultaneously considering and advocating (on behalf of other of the minors) *for* adoption as a permanent plan,

---

[4]Section 366.26, subdivision (c)(1) provides, in essence, that when reunification services have been terminated and the court finds the child is likely to be adopted, the court must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental under one of the exceptions listed in subsections (A) through (E). (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 773 [109 Cal.Rptr.2d 123].) The new exception provided by subdivision (c)(1)(E) is whether "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption."

there was "an actual, disabling conflict of interest . . . [that] requires the public defender to discontinue representation of each of the children." At oral argument, Henkels elaborated on the conflict. In Francisco's case, a permanent plan of guardianship was proposed, and he had expressed a wish to maintain a sibling relationship with Janet, Vanessa and Reyna, which is a factor under section 366.26, subdivision (c)(1)(E) permitting a court to refuse to terminate parental rights to those siblings. However, the permanent plans of adoption recommended for Janet, Vanessa and Reyna would sever that sibling relationship, and therefore Francisco should be represented by an attorney untainted by any confidential communication Henkels may have obtained from Janet, Vanessa and Reyna, or by any duty Henkels owed to Janet, Vanessa and Reyna to consider and advocate that their best interests were served by the stability provided by adoption.

Henkels applied the same analysis to the conflict of an attorney representing Cynthia or Adriana. Henkels also noted a distinct, but equally intractable, actual conflict existed with regard to the minors for whom adoption as a permanent plan was recommended. Two of those children (Janet and Vanessa) had expressed an interest in preserving their sibling relationship, and an attorney for them could therefore consider and counsel them on whether to invoke the sibling relationship exception to advocate against the recommended permanent plans of adoption. However, that attorney should analyze the relative benefits to them independently from confidences he or she may have received from or any duty owed to Francisco, Cynthia or Adriana. Henkels noted the issue was even more complicated for the attorney representing Reyna, for whom adoption was the recommended plan. Reyna's tender age prevented her from expressing an informed preference on whether her best interests were served by adoption or by maintaining sibling relationships, and her attorney should evaluate her best interests untainted by any duty to or confidences received from those minors who might wish to maintain their sibling relationship with Reyna.

The court denied the public defender's motion to be relieved as minors' attorney. This petition for writ of mandate followed.

## II

### ANALYSIS

The public defender's petition for writ of mandate requests an order directing the trial court to relieve it as counsel for the minors and to appoint separate counsel for each minor. The response filed by the Agency agrees the public defender had actual conflicts of interest that required the court to

relieve it as minors' attorney, but questions whether different counsel is required for each minor. We address the issues serially because we conclude the public defender's actual conflicts of interest required the court to relieve it as minors' attorney and to evaluate the potential conflicts of interest for purposes of appropriate appointment of new counsel for the minors.

### A. *An Attorney Must Withdraw from an Existing Representation of Multiple Clients When an Actual Conflict of Interest Arises Among Those Existing Clients*

Unless the court finds a minor would not benefit from representation by counsel, a minor is statutorily entitled to appointed counsel (*In re Candida S.* (1992) 7 Cal.App.4th 1240, 1252 [9 Cal.Rptr.2d 521]), who may not "represent another party . . . whose interests conflict with the child's." (§ 317, subd. (c).) If an appointed attorney is representing multiple minors in a dependency proceeding, and an actual conflict of interest between the minors arises, the attorney is obliged to withdraw from representing the clients (Rule 3-310(C)(2)) and the court is required to relieve the attorney and appoint new counsel. (*In re Candida S., supra; In re Richard H.* (1991) 234 Cal.App.3d 1351, 1367 [285 Cal.Rptr. 917].)

The public defender here represented all seven sibling minors. After the court terminated reunification services and scheduled the section 366.26 hearing and the assessments recommended adoption as the permanent plan for one or more of the minors, an actual conflict of interest arose among at least some members of the client group. By way of example only, Francisco's expressed wish to maintain a sibling relationship with Reyna requires his attorney to counsel him on whether to invoke section 366.26, subdivision (c)(1)(E) and pursue any rights conferred on him by that section.[5] However, the same attorney could not pursue Francisco's interests by opposing a permanent plan of adoption for Reyna on the ground it would sever their sibling relationship, and simultaneously independently evaluate and advocate whether Reyna's best interests would be served by the stability provided by adoption.

We agree with the public defender and Agency that because an actual conflict of interest has arisen here, the trial court was required to grant the motion to relieve the public defender as counsel for the minors.

---

[5] We do not necessarily hold that section 366.26, subdivision (c)(1)(E) confers standing on Francisco to assert that the benefits *he* would accrue from continued sibling contacts is a basis under subdivision (c)(1)(E) for a court to deny *to his siblings* the benefits of a permanent plan of adoption. We only conclude that Francisco's attorney should be able to assert his standing and pursue his arguments free from conflicting loyalties to those siblings.

## B. *An Attorney May Not Accept a New Representation of Multiple Clients When There Exists a Potential Conflict of Interest Between Those Prospective Clients*

The order relieving the public defender as counsel for the minors leaves minors without counsel and requires appointment of new counsel. Agency notes that because the court must now appoint new counsel, the issue becomes whether the trial court must appoint different counsel for each child (as requested by the public defender's writ petition) or whether the court has discretion to separate the minors into subsets (each consisting of one or more of the minors who have congruent interests) and then appoint a counsel for each subset of minors. It can be argued that because section 366.26, subdivision (c)(1)(E) provides each minor with his or her own potential claim that parental rights should not be terminated as to any of the prospective adoptees because of the deleterious impact termination would have on his or her sibling relationship with that prospective adoptee, it appears impossible to create any subset of minors that would be free from at least a theoretical *potential* conflict among the members in that subset. This theoretical potential conflict exists from the commencement of a multi-sibling dependency proceeding because of the possibility reunification will be unsuccessful and the siblings' interests may differ at the permanent plan stage; therefore, in multiple sibling cases, it can be argued that separate counsel must be appointed for each at the commencement of the proceedings. On the other hand, dependency proceedings often result in reunification and even if they do not, multi-sibling permanent plans do not necessarily involve an actual conflict. Although a theoretical potential conflict of interest exists in each multiple sibling dependency proceeding, it appears this potential conflict is theoretical, not realistic. Therefore, appointment of separate counsel for each sibling at the commencement of the dependency proceeding would in most cases result in an unnecessary duplication of effort and resources. Agency argues that appointment of separate counsel for each minor is an extreme action and should be eschewed in favor of permitting the trial court to assess whether the minors could be categorized into coalitions without actual conflict and permit appointment of one attorney for that coalition. A degree of tension exists between Rule 3-310, which prohibits an attorney from accepting new representation of multiple clients when a potential conflict of interest exists among the clients, and section 317, subdivision (c), which prohibits representation of a minor in a dependency proceeding and another person or agency whose interests conflict with the minor's. Rule 3-310 refers to potential conflict and section 317, subdivision (c) seems to contemplate an actual conflict. We believe, however, that in the dependency context the two concepts can be reconciled by a rule that an attorney may not represent multiple clients if an actual conflict of interest between clients exists and

may not accept representation of multiple clients if there is a reasonable likelihood an actual conflict of interest between them may arise. By interpreting the Rule 3-310 concept of potential conflict to mean, at least in the dependency context, a reasonable likelihood an actual conflict will arise, it is possible to reconcile the importance of independent representation with the practicality of not overburdening the dependency system when unnecessary. Agency's position that the existence of only an actual conflict of interest warrants the appointment of separate counsel does not reflect consideration of Rule 3-310's reference to potential conflicts of interest.

Because it is impossible for this court on the appellate record to determine the reasonable likelihood of actual conflicts of interest arising among the innumerable potential conflicts of interest of the seven siblings, we remand the matter to the trial court to determine whether each minor should have separate counsel or whether groups of minors can properly be represented by the same counsel under the standard of whether it is reasonably likely an actual conflict of interest within this group will arise.

We recognize this is not an easy or simple task. However, we have determined there is an actual conflict of interest between some of the siblings here as described by the public defender and, as a result, the public defender must be relieved as counsel for all. The clearest actual conflict of interest among siblings in the dependency system, especially with the adoption of section 366.26, subdivision (c)(1)(E), arises when advocacy for one minor's best interests is for termination of parental rights and advocacy for another's best interests is against termination of parental rights. That situation has been determined to exist between the group of Janet, Vanessa and Reyna, for whom a permanent plan of adoption and termination of parental rights was recommended, and the group of Francisco, Cynthia and Adriana, for whom a permanent plan of guardianship was recommended and each of whom expressed preference for reunification rather than termination of parental rights.

Focusing on Janet, Vanessa and Reyna, for whom permanent plans of adoption were recommended, each could argue in favor of termination of parental rights for themselves; alternatively, any one of them could argue against termination of parental rights both as to their own case and as to the cases of one or both of the others. There is at least a theoretical *potential* for conflict among Janet, Vanessa and Reyna *inter se*, as well as a theoretical potential conflict between any one of them and those of their siblings for whom a permanent plan of guardianship is proposed and who may elect to assert the sibling relationship exception to termination of parental rights. Accordingly, there appears to be no possibility for creating any group that

would include Janet, Vanessa or Reyna that would also be free from at least a theoretical potential conflict. However, we believe the issue is whether there is a reasonable likelihood the theoretical potential conflict of interest will become an actual conflict of interest. If there is not a reasonable likelihood an actual conflict of interest will arise among this group, one attorney could be appointed to represent all in the group. Of course, if an actual conflict of interest does arise, the attorney must be relieved of representing any of them.

Similarly, focusing on Francisco, Cynthia and Adriana, the three minors for whom termination of parental rights and adoption are not recommended, there is a theoretical *potential* for conflict within this superficially congruent group. Each might argue that termination of parental rights as to all of the adoptable children should be rejected because of its impact on their sibling relationship. However, any one of them could conclude that the best interests of any one (or all) of the adoptable children would be served by the stability of an adoptive home, and therefore could choose to sacrifice his or her own interest in a continuing relationship in favor of giving his or her sibling the stability and security of an adoptive home. Because there is a theoretical potential for Francisco, Cynthia or Adriana to elect to pursue a position different from each other, there is a theoretical potential conflict among this group *inter se*, as well as with those of their siblings whose permanent plans entail termination of parental rights and adoption. However, again the issue is the reasonable likelihood the theoretical potential conflict of interest will become an actual conflict of interest and the appointment of new counsel would be based on the same considerations as those of the Janet, Vanessa and Reyna group.

We conclude that in a dependency proceeding, one attorney may not continue to represent multiple minors among whom there is an actual conflict of interest, and when an actual conflict of interest arises, the attorney must be relieved from representation of any of the minors. We also conclude an attorney may not be appointed to represent multiple minors if it is reasonably likely an actual conflict of interest between or among them may arise. Otherwise, one attorney may be appointed for and continue to represent multiple minors.

### DISPOSITION

Let a writ of mandate issue directing the Superior Court of San Diego County to vacate its order of March 8, 2002, and to enter a new and different

order granting the public defender's motion to be relieved as counsel for the minors, and hold a hearing to determine appointment of new counsel for minors in accordance with the considerations expressed in this opinion.

Huffman, Acting P. J., and McConnell, J., concurred.