61 Cal.Rptr.3d 256 (2007)
152 Cal.App.4th 297
In re JASMINE S. et al., Persons Coming Under the Juvenile Court Law.
Los Angeles County Department of Children and Family Services, Plaintiff and Respondent,
v.
Anna P. et al., Defendants;
Children's Law Center, Objector and Appellant.
No. B194714.
Court of Appeal of California, Second District, Division Five.
June 19, 2007.
*257 Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Seth M.M. Stodder, Los Angeles, for Objector and Appellant.
Raymond G. Fortner, Jr., Los Angeles County Counsel, Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.
Merrill Lee Toole, under appointment by the Court of Appeal, Monrovia, for Minor Jasmine S.
Christopher Blake, under appointment by the Court of Appeal, San Diego, for Minor Lou D.
MOSK, J.

INTRODUCTION
This is one of eight appeals by the Children's Law Center of Los Angeles (the Center or CLC), all from orders of the juvenile court disqualifying the Center from representing children in dependency proceedings because of purported conflicts of interests (conflicts). In the first appeal, In re Charlisse C. (2007) 149 Cal.App.4th 1554, 58 Cal.Rptr.3d 173 (Charlisse), this court reversed the order disqualifying the Center in a case involving a purported conflict arising from the successive representation of two clients with adverse interests. We now consider, on essentially the same record before us in Charlisse, whether the juvenile court erred in disqualifying one of the Center's independent units in a case involving the concurrent representation of two clients, siblings Jasmine S. and Lou D. (the children), with potentially adverse interests. The children were each represented by a different independent *258 unit of the Center. The Center had created these independent units to enable it to provide, in the same proceeding, legal representation to multiple clients who might have conflicts. As in Charlisse, we reverse the disqualification order.
We hold that, consistent with California Rules of Court, rule 5.660(c)[1] and the California Supreme Court's decision in In re Celine R. (2003) 31 Cal.4th 45, 1 Cal. Rptr.3d 432, 71 P.3d 787, an attorney representing multiple siblings in dependency proceedings may be disqualified only if the siblings have an actual, present conflict of interest. A mere potential conflict does not warrant disqualification. The juvenile court found no actual conflict in this case. Further, there is no substantial evidence to support the conclusion that the Center's current structure and operating procedures are not consistent with the safeguards against conflicts approved in Castro v. Los Angeles County Bd. of Supervisors (1991) 232 Cal.App.3d 1432, 1435-1445, 284 Cal.Rptr. 154 (Castro), and People v. Christian (1996) 41 Cal. App.4th 986, 991-1002, 48 Cal.Rptr.2d 867 (Christian). Absent evidence of a material, ongoing breach of the Center's ethical screens or a breach related to the particular case at issue, the Center's three independent units should not be treated as a single firm for conflict purposes.

BACKGROUND
The lead and dissenting opinions in Charlisse contain facts relating to the Center in addition to those we set forth below. (Charlisse, supra, 149 Cal.App.4th at pp. 1560-1565, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.) and at pp. 1583-1598, 58 Cal. Rptr.3d 173 (dis. opn. of Turner, P.J.).)[2]
The Center is a publicly funded, nonprofit law office that represents parties in the Los Angeles County Juvenile Dependency Court when legal services are required under Welfare and Institutions Code section 317. The Center formerly was called Dependency Court Legal Services. Pursuant to two agreements, first with the Los Angeles County Board of Supervisors and now with the Administrative Office of the Courts, the Center has been structured into three independent units, designated CLC Units 1, 2, and 3, to permit the Center to provide legal representation to multiple children in the same dependency proceeding, even if the children have conflicting interests.[3]
These proceedings commenced on July 18, 2006, when Jasmine was 14 years old and her half-brother Lou was 11. The Los Angeles County Department of Children and Family Services (DCFS) filed a petition pursuant to Welfare and Institutions Code section 300 with respect to both children, alleging that the children's mother (mother) had neglected the children, that mother and Lou's father both had a history of drug abuse and violent domestic altercations, and that Lou's father had a history of drug-related criminal convictions. Jasmine was detained by DCFS. Lou could not be located and was "detained at large."
*259 At the detention hearing on July 18, the juvenile court appointed CLC Unit 1 attorney Jody Leibman to represent Jasmine. The juvenile court ordered the children detained and issued a protective custody warrant for Lou. Jasmine was placed with her maternal aunt. Mother voluntarily surrendered Lou into DCFS custody on August 14. Lou did not wish to be placed with his aunt, with whom Jasmine was placed, alleging that his aunt "hits on" him. He was placed in foster care. Mother admitted she had an unresolved substance abuse problem and had recently used cocaine. Both children stated that they did not want to live with mother. DCFS filed an amended petition on August 21, which, among other things, added an allegation that mother had inappropriately disciplined the children by striking them with a closed fist and belt.
At the pretrial resolution conference (PRC) on August 21, the juvenile court appointed CLC Unit 2 attorney Jennifer Lorson to represent Lou. During the hearing, Lorson stated that Lou did not want to live with his maternal aunt because "she has used corporal discipline on him." The record does not reflect why the juvenile court appointed separate counsel for Lou. No one raised a conflict issue at the August 21 hearing.
The PRC was continued to September 18, at which hearing Lou reversed his prior position and requested to be placed, along with Jasmine, in their maternal aunt's home. The juvenile court deferred Lou's request pending further investigation. No one raised a conflict issue at the September 18 hearing.
The PRC was continued again to September 22, the same day that the juvenile court heard the motion to disqualify the Center in Charlisse, supra, 149 Cal. App.4th 1554, 58 Cal.Rptr.3d 173. In that case, a child's mother sought to disqualify the Center's Unit 3 from representing the child on the ground that the Center's Unit 1 had previously represented the mother. (Id. at pp. 1562-1564, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.).) The juvenile court granted the motion to disqualify, stating that the Center's "ethical walls may have been breached" giving the "appearance of conflict." (Id. at p. 1564, 58 Cal.Rptr.3d 173.)
In this case, none of the parties attended the September 22 hearing  only the attorneys were present. The juvenile court approved the placement of both Jasmine and Lou with their maternal aunt. Lorson, Lou's CLC Unit 2 attorney, then informed the juvenile court that, based on what she "heard happening in another case in this courtroom"  presumably Charlisse, supra, 149 Cal.App.4th 1554, 58 Cal. Rptr.3d 173  she had checked the "email list for CLC2's supervisors" to see if Miriam Krinsky, the Center's Executive Director, was on the list, and discovered that the list included Krinsky. Lorson represented to the juvenile court that she had sent "confidential, case specific" information to those on the list. Lorson said that she was not aware that Krinsky was on the list and had not even known how to check who was on the list until that day.
Lorson apparently showed the juvenile court a roster she had printed from her Microsoft Outlook e-mail program, which the juvenile court marked as an exhibit and lodged.[4] The juvenile court was unsure *260 of the significance of the document "pending further exploration of its authenticity, genuineness and relevancy." The juvenile court received no further evidence relating to the document, and the document itself was not included in the record on appeal. Nevertheless, the juvenile court continued the PRC to September 29, and ordered all three of the Center's units to show cause why they  presumably the entire Center  should not be recused from the case.
Evidence submitted by the Center prior to the next hearing on September 29 indicated that the e-mail list that Lorson had referred to was a non-confidential e-mail list for CLC Unit 2 supervisors. Each of the Center's three units also had a separate "case-confidential" e-mail group. Email transmitted through a unit's case-confidential e-mail group went only to people in that unit. The Center's policy  applicable to each unit and communicated by directives to the staff  was that e-mails regarding case-specific matters or containing confidential information were to be transmitted only through the case-confidential e-mail groups. Krinsky was not a recipient of any of the case-confidential email groups. Krinsky further declared that "[w]henever I receive a misdirected email, it is my practice to immediately delete it. I have no recollection of any case specific information that might have been contained in any of those few isolated misdirected emails over the years."
At the September 29 hearing, Lorson stated the she "did not request to be relieved," but had informed the juvenile court of her concern about the e-mail group because she felt it her duty to do so after hearing the juvenile court's disqualification order in Charlisse, supra, 149 Cal. App.4th 1554, 58 Cal.Rptr.3d 173. The head of CLC Unit 2, Lorson's supervisor, contended that there was no conflict and that the Center should not be disqualified.
The juvenile court stated that the Center's evidentiary submissions "highlight and put an exclamation point on the need for amendments to the [Center's] operating rules and procedures." Referring to the evidence submitted in connection with Charlisse, supra, 149 Cal.App.4th 1554, 58 Cal.Rptr.3d 173, the juvenile court said that the Center's declarations did not address "that [Krinsky] surreptitiously entered the computer system of [CLC Unit] 2 or 3 and added her name to the group-wise" in June 2003. (See Charlisse, supra, 149 Cal.App.4th at pp. 1564, 1576-1577, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.).) The juvenile court stated, "[T]he cases have, especially [City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839, 43 Cal.Rptr.3d 771, 135 P.3d 20], indicated the importance of appearances to the public, since this is a public funded attorney group, it's important to maintain the appearance of no conflict, and instead what we have is the appearance of conflict, inadvertent or otherwise. I don't know. I don't really care. I'm not going to make any findings one way or the other but, clearly, it gives the appearance of a conflict." The juvenile court concluded, "So there are a lot of structural problems that I'm hopeful will be corrected to allow [the Center] to represent multiple parties in these actions. It will be corrected by the amendments I've proposed."
The juvenile court continued the matter to October 4 "in order to resolve these apparent conflict issues to see whether or not we can come to some agreement on a way in which [the Center] can represent multiple parties, then I have to see what happens on the fourth and go from there." *261 The juvenile court instructed Lorson "don't do anything" until October 4.
At the October 4 hearing, the head of CLC Unit 2 again objected to CLC Unit 2 being recused, stating that "there is no actual conflict in this case" and no "structural impediment" to its continued representation of Lou. He represented to the juvenile court that Lorson had explained the situation to Lou as best she could, and that Lou wanted CLC Unit 2 to remain in the case. The head of CLC Unit 1 also objected to CLC Unit 1 being disqualified, stating that there was no actual or "structural" conflict in the case. The juvenile court observed that a "simple modification of [the Center's] existing operating rules and procedures would allow [the Center] to go forward[.]" The juvenile court then disqualified CLC Unit 1, and appointed a new attorney for Jasmine. The juvenile court stayed the issue until October 11 "only as to Lou," so that Lorson could obtain a conflict waiver.
At the conclusion of the hearing, Lorson sought additional guidance from the juvenile court because she was concerned that she might "get dinged by the Bar for not following ethical rules." The juvenile court clarified its ruling: "There's a systemic conflict. There's no actual conflict between the children."[5] The juvenile court clarified further, "I wouldn't say I found ... [the Center] is one big firm. What I did find is that the ethical walls that were suppose [sic ] to be in place to make sure you stayed three separate firms had been breached. [¶] And on occasion it sounds to me as if there's been inappropriate interaction between the three firms, either from the administration, or filtering on down the supervisors, or whatever, so that  nobody can ever prove there's an actual conflict but it certainly gives the appearance of a conflict, [¶] But I have not received any facts that on any specific case there was a breach  there was conflict or breach of the privilege or confidentiality. Certainly, it's  [¶]  the appearance and the ability to cross the ethical wall." The Center timely appealed the juvenile court's order disqualifying CLC Unit 1.

DISCUSSION

A. Standard of Review
"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law. [Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion. [Citation.]" (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, *262 Inc. (1999) 20 Cal.4th 1135, 1143-1144, 86 Cal.Rptr.2d 816, 980 P.2d 371; see also City and County of San Francisco v. Cobra Solutions, Inc. (2006) 38 Cal.4th 839, 848, 43 Cal.Rptr.3d 771, 135 P.3d 20 (Cobra Solutions).)

B. The Juvenile Court Abused Its Discretion in Disqualifying the Center's Unit 1[6]
The juvenile court abused its discretion when it disqualified CLC Unit 1 from representing Jasmine for three independent reasons: (1) it applied the wrong legal standard; (2) applying the proper legal standard, there is no substantial evidence of an actual, disqualifying conflict between Jasmine and Lou, even if CLC Unit 1 and CLC Unit 2 are treated as a single firm for conflict purposes; and (3) the record in this case does not support the juvenile court's conclusion that the Center's Unit 1 and Unit 2 must be treated as a single firm for conflict purposes.

1. The juvenile court erred by applying an appearance-of-conflict standard
As in Charlisse, supra, 149 Cal. App.4th 1554, 58 Cal.Rptr.3d 173, the juvenile court disqualified CLC Unit 1 based on the "appearance" of a conflict. As observed in Charlisse, however, "California courts do not disqualify lawyers on conflict of interests grounds  particularly lawyers from legal services agencies  when the lawyer has no actual or imputed conflict of interest. [Citations.] Contrary to the juvenile court's suggestion, `an appearance of impropriety by itself does not support a lawyer's disqualification.' (DCH Health Services Corp. v. Waite (2002) 95 Cal. App.4th 829, 833 [115 Cal.Rptr.2d 847].)" (Charlisse, supra, 149 Cal.App.4th at p. 1572, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.) and at p. 1580, fn. 1, 58 Cal. Rptr.3d 173 (cone. opn. of Armstrong, J.).) Even Castro, supra, 232 Cal.App.3d at page 1432, 284 Cal.Rptr. 154  upon which the juvenile court and respondents rely  rejected the "appearance of impropriety" standard ("plaintiffs concede that California has not adopted that standard"). (Id. at p. 1443, 284 Cal.Rptr. 154.) By applying the wrong legal standard to disqualify CLC Unit 1, the juvenile court abused its discretion. (Doe 2 v. Superior Court (2005) 132 Cal.App.4th 1504, 1517, 34 Cal. Rptr.3d 458 ["`A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand.' [Citation.]"].)

2. The juvenile court should not have disqualified CLC Unit 1 because there was no actual conflict between Jasmine and Lou
Contrary to the juvenile court's assertions, no California authority has recognized the concept of a theoretical "systemic" (the term used by the juvenile court here) or "structural" conflict as the sole basis for attorney disqualification in a particular case. As explained in Charlisse, supra, 149 Cal.App.4th at page 1566, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.), a conflict arises when the circumstances of a particular case present "a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person." (Rest.3d of the Law Governing Lawyers *263 § 121, italics added.) If competent evidence does not establish such a conflict, the attorney is not disqualified for a conflict.
California law is settled that, in dependency proceedings, an attorney representing multiple siblings must be disqualified only if the circumstances present an actual conflict  a mere potential conflict is insufficient to warrant disqualification. (Rule 5.660(c)(2)(E) ["If the court determines that an actual conflict of interest exists, the court must relieve an attorney from representation of some or all of the siblings," italics added];[7]In re Celine R., supra, 31 Cal.4th at p. 58, 1 Cal. Rptr.3d 432, 71 P.3d 787 ["After the initial appointment [of a single lawyer to represent multiple siblings in dependency proceedings], the court will have to relieve counsel from multiple representation if, but only if, an actual conflict arises," italics added]; In re Barbara R. (2006) 137 Cal.App.4th 941, 953-954, 40 Cal.Rptr.3d 687 [no conflict when single attorney represented half-siblings; "[a] conflict arises where minor's counsel seeks a course of action for one child with adverse consequences to the other"].)[8]
Neither Castro, supra, 232 Cal.App.3d 1432, 284 Cal.Rptr. 154, nor Christian, supra, 41 Cal.App.4th 986, 48 Cal.Rptr.2d 867  both of which predate rule 5.660(c) and the Supreme Court's decision in In re Celine R.  alters this fundamental rule. *264 In both of those cases, the courts assumed, for purposes of their analyses, that an actual conflict existed between the relevant clients. (Castro, supra, 232 Cal.App.3d at pp. 1440-1442, 284 Gal.Rptr. 154; Christian, supra, 41 Cal.App.4th at pp. 991-992, 1001, 48 Cal.Rptr.2d 867.) Neither of those cases held or implied that the absence or breach of one or more of the ethical safeguards present would create a conflict when no conflict would otherwise exist. To the contrary, the court in Castro stated, "It is not to be assumed hypothetically, in the absence of facts, that DCLS attorneys will act to violate their client's confidence or to compromise their legal interests," and that "[speculative contentions of conflict of interest cannot justify disqualification of counsel." (Castro, supra, 232 Cal. App.3d at p. 1442, 284 Cal.Rptr. 154.)
In this case, the record contains no evidence of an actual, disqualifying conflict. The record does not indicate why the juvenile court appointed separate counsel for Jasmine and Lou in the first place. We cannot infer from a silent record that the Center determined that an actual conflict existed between the children at the inception of the case, or that the Center ever represented to the juvenile court that an actual conflict existed. Any such inference is undermined by the different legal standards that govern whether an attorney can accept the initial appointment to represent multiple siblings in a dependency proceeding, on the one hand, and whether an attorney must be disqualified from an existing representation, on the other hand. Rule 5.660(c)(1)(B)(ii) requires an attorney to decline to represent multiple siblings if, inter alia, "[c]ircumstances specific to the case present a reasonable likelihood that an actual conflict of interest will arise among those siblings" (italics added). In contrast, rule 5.660(c)(2)(C) specifically provides, "It is not necessary for an attorney to withdraw from representing some or all of the siblings if there is merely a reasonable likelihood that an actual conflict of interest will develop." Rather, an attorney must withdraw or be disqualified only if an actual conflict exists. (Rule 5.660(c)(2)(A), (E); In re Celine R., supra, 31 Cal.4th at p. 58, 1 Cal.Rptr.3d 432, 71 P.3d 787.)
The heads of CLC Units 1 and 2 both objected to being disqualified on the ground that no actual conflict existed between Jasmine and Lou. Further, in clarifying its ruling for Lorson, the juvenile court expressly stated, "There's no actual conflict between the children." No facts or circumstances giving rise to a present, actual conflict of interest between Jasmine and Lou appear in the record.[9] The juvenile court therefore erred by disqualifying CLC Unit 1 from representing Jasmine.

3. The record does not warrant treating the Center as a single firm for conflict purposes
We hold that there was no actual conflict between Jasmine and Lou. Even if *265 we were to assume that such a conflict existed, however, disqualification would be required only if CLC Unit 1 and CLC Unit 2 are treated as a single law firm for conflict purposes. (See Charlisse, supra, 149 Cal.App.4th at pp. 1571-1572, 58 Cal. Rptr.3d 173 (lead opn. of Mosk, J.).) As stated by Justice Armstrong in his concurring opinion in Charlisse, the Center has not "meaningfully departed from the practices approved in Castro and operated as one law firm." (Charlisse, supra, 149 Cal. App.4th at p. 1580, 58 Cal.Rptr.3d 173 (cone. opn. of Armstrong, J.).) The Center's ethical safeguards, as reflected in the agreements and operating procedures described in Charlisse, are consistent with Castro, supra, 232 Cal.App.3d at pages 1435-1445, 284 Cal.Rptr. 154, and Christian, supra, 41 Cal.App.4th at pages 991-1002, 48 Cal.Rptr.2d 867, and, if adhered to, are sufficient to protect the duties of loyalty, confidentiality and professional independence owed by the Center's lawyers to their clients.
Because the Center's structure and operating procedures are sufficient to protect the clients' interests, the Center's independent units should be treated as a single law firm for conflict purposes only if the record contained substantial evidence of either (1) a material breach of the Center's ethical screens or material interference with an individual attorney's independent professional judgment related to the particular case at issue; or (2) persistent, material violations of the ethical screens, or persistent interference with attorneys' independent professional judgment, with respect to other cases sufficient to warrant disregarding the units' separate existence for all purposes.[10] (See Dworkin v. General Motors Corporation (E.D.Pa.1995) 906 F.Supp. 273, 282, fn. 14 [breach of ethical screen justifies disqualification only if material].)
In this case, the record does not contain a finding by the juvenile court or substantial evidence to justify treating the Center's separate units as a single law firm.[11] There is no evidence that any of the conduct at issue in Charlisse had any bearing on or relationship to this case or occurred while this case was pending, nor is there evidence of misconduct so persistent or pervasive that it requires disregarding the units' separate existence at this time. (Charlisse, supra, 149 Cal.App.4th at pp. 1575-1578, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.).) Further, there is no evidence that Leibman  attorney for Jasmine  or anyone else in CLC Unit 1 obtained confidential information from CLC Unit 2 relating to this case, or that the Center's confidential e-mail policy is routinely violated.
Evidence that confidential e-mails are occasionally misdirected, as well as Lorson's professed ignorance of the Center's case-confidential e-mail policy, should alert the Center's administration that it can and should do more to protect the security of confidential e-mails. The record contains no evidence, however, of a material breach of the Center's ethical screens relating to this case, or of persistent, material breaches indicating that the Center's ethical screens have broken down. For this reason also, the juvenile court erred by its disqualification order.

*266 DISPOSITION
The juvenile court's order of disqualification is reversed.
I concur: ARMSTRONG, J.
TURNER, P.J.
I concur in the result. I respectfully disagree with my colleagues' assessment of the facts. The "evidence" relied upon by the juvenile court consisted entirely of unsworn statements by Jennifer Lorson and a document never received into evidence. But there is no evidence an actual conflict of interest exists between the two children. No doubt a potential conflict exists. The two children have made largely diametrically conflicting statements to social workers and the two youngsters have expressed different placement preferences. But there is no evidence the children's attorneys acting as counsel and guardians ad litem will assert actually conflicting positions. Hence, I would merely reverse the disqualification order because there is no evidence that an actual conflict of interest exists. (In re Celine R. (2003) 31 Cal.4th 45, 58, 1 Cal.Rptr.3d 432, 71 P.3d 787; Carroll v. Superior Court (2002) 101 Cal. App.4th 1423, 1428-1430, 124 Cal.Rptr.2d 891; Welf. & Inst.Code, § 317, subd. (c).) Regardless of the evidence concerning noncompliance with the ethical Walls mandated by Castro v. Los Angeles County Bd. of Supervisors (1991) 232 Cal.App.3d 1432, 1435-1445, 284 Cal.Rptr. 154, no improper concurrent representation issue is present.
NOTES
[1] All rule references are to the California Rules of Court unless stated otherwise. Former rule 1438, in effect at the time of the disqualification order in this case, was renumbered rule 5.660 effective January 1, 2007.
[2] We granted the Center's request for judicial notice of the record on appeal in Charlisse, supra, 149 Cal.App.4th 1554, 58 Cal.Rptr.3d 173.
[3] Prior to 2005, the Center represented both parents and children in dependency proceedings. (See Castro, supra, 232 Cal.App.3d at p. 1436, 284 Cal.Rptr. 154.) The Center now provides legal services only to children.
[4] Although the transcript has a note that this document was admitted in evidence, the juvenile court expressly stated that it was "lodged" in the legal file as Lorson's exhibit A pending further proceedings. The juvenile court described the document as appearing "to be a printout of a group-wise email, indicating ... on this particular email address, the title . . . CLC2 attorney supervisors properties [sic] and what appears are the names Katherine Anderson, Miriam Krinsky, Marc Leftwich and Rick Nagatani."
[5] When discussing with Lorson how to obtain effective consent to the Center's so-called "systemic" conflict, the juvenile court stated that Lorson needed consent only from the children because the conflict "is between the children, not between the children and the mom. The conflict  you only need consent between the parties that have the conflict." The juvenile court did not say there was an actual conflict in this case, nor did the juvenile court identify any specific conflicting interests other than the purported "systemic" conflict.
[6] The children argue that the Center lacks standing to pursue this appeal. This court rejected the identical contention in (Charlisse, supra, 149 Cal.App.4th at pp. 1564-1565, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.) and at p. 1583, 58 Cal.Rptr.3d 173 (dis. opn. of Turner, P.J.).)
[7] Rule 5.660(c)(2) provides:

"(2) Withdrawal from appointment or continued representation
"(A) An attorney representing a group of siblings has an ongoing duty to evaluate the interests of each sibling and assess whether there is an actual conflict of interest.
"(B) The following circumstances, standing alone, do not necessarily demonstrate an actual conflict of interest:
"(i) The siblings are of different ages;
"(ii) The siblings have different parents;
"(iii) There is a purely theoretical or abstract conflict of interest among the siblings;
"(iv) Some of the siblings are more likely to be adopted than others;
"(v) The siblings have different permanent plans;
"(vi) The siblings express conflicting desires or objectives, but the issues involved are not material to the case; or
"(vii) The siblings give different or contradictory accounts of the events, but the issues involved are not material to the case.
"(C) It is not necessary for an attorney to withdraw from representing some or all of the siblings if there is merely a reasonable likelihood that an actual conflict of interest will develop.
"(D) If an attorney believes that an actual conflict of interest existed at appointment or developed during representation, the attorney must take any action necessary to ensure that the siblings' interests are not prejudiced, including:
"(i) Notifying the juvenile court of the existence of an actual conflict of interest among some or all of the siblings; and
"(ii) Requesting to withdraw from representation of some or all of the siblings.
"(E) If the court determines that an actual conflict of interest exists, the court must relieve an attorney from representation of some or all of the siblings.
"(F) After an actual conflict of interest arises, the attorney may continue to represent one or more siblings whose interests do not conflict only if:
"(i) The attorney has successfully withdrawn from the representation of all siblings whose interests conflict with those of the sibling or siblings the attorney continues to represent;
"(ii) The attorney has exchanged no confidential information with any sibling whose interest conflicts with those of the sibling or siblings the attorney continues to represent; and
"(iii) Continued representation of one or more siblings would not otherwise prejudice the other sibling or siblings."
[8] "An actual conflict exists when an attorney's professional judgment for one client necessarily will be affected adversely because of the interests of another client." (2 Mallen & Smith, Legal Malpractice (2007 ed.) § 16:2, p. 818.)
[9] Lou moved to augment the record on appeal with the transcript of a juvenile court hearing that occurred in November 2006, after the. juvenile court's order disqualifying CLC Unit 1 and after the Center filed its notice of appeal. At the hearing, Lorson requested to be (and was) relieved as counsel for Lou because of her perception that Krinsky inappropriately had sought to influence CLC Unit 2's representation of Lou in a meeting between Krinsky and the head of CLC Unit 2. The transcript indicates, however, that Lorson did not attend the meeting and thus had no personal knowledge of what occurred there. The head of CLC Unit 2 represented to the juvenile court, on the record, that Krinsky had not influenced any decision related to Lou's representation. Because the hearing occurred subsequent to the order on appeal, and is irrelevant to our resolution of the issues raised by the disqualification of CLC Unit 1, we deny Lou's motion to augment the record. (In re Zeth S. (2003) 31 Cal.4th 396, 405, 2 Cal.Rptr.3d 683, 73 P.3d 541.)
[10] A Center attorney with a personal disqualifying conflict must always be disqualified, along with his or her entire unit. (See Cobra Solutions, supra, 38 Cal.4th at pp. 847-848, 43 Cal.Rptr.3d 771, 135 P.3d 20; Charlisse, supra, 149 Cal.App.4th at pp. 1566-1569, 58 Cal.Rptr.3d 173 (lead opn. of Mosk, J.).)
[11] The juvenile court suggested modifications to the Center's operating procedures. Disqualification should not result in this case from the failure of the Center to implement such suggestions.