[No. C065121. Third Dist. Dec. 21, 2010.]

In re T.C. et al., Persons Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
SONYA C., Defendant and Appellant.

COUNSEL

Mara Carman, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

BUTZ, J.—The mother, Sonya C. (mother), appeals the juvenile court's order terminating her parental rights to T.C. Mother contends that because the permanent plans for two-year-old T.C. and her almost 13-year-old half sister, R.B., were different, an actual conflict arose for the minor's counsel and the trial court prejudicially erred in not recognizing this conflict and appointing separate counsel. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The minor T.C., then two months old, and her half sister R.B., then 11 years old, were detained in December 2008 due to mother's ongoing drug use and untreated mental health problems. They were placed together in a foster home and, a few days later, moved together to live with a nonrelated extended family member. In March 2009, T.C. was declared a dependent based on mother's mental health problems, drug use, and domestic violence between mother and T.C.'s father. R.B. was declared a dependent on the same basis in June 2009. Reunification services were ordered.

Throughout the proceedings, R.B. and T.C. continued to live together. R.B. was adjusting well and T.C. was "doing great." It appeared that R.B. had taken a caretaking role with T.C. and was very protective of her. The foster parents supported reunification with mother, but were also willing to provide the children with a permanent placement.

Mother struggled with reunification services and ultimately her efforts at reunification were unsuccessful. She repeatedly tested positive for drugs, continued to be involved in incidents of domestic violence with T.C.'s father, and appeared either unable or unwilling to separate from him. Reunification services were terminated in December 2009.

The children were placed together and had an obviously close relationship with each other. During visits with mother, T.C. preferred being held by R.B. and would cry if taken from her. It was difficult for R.B. to see T.C. upset.

R.B. was conflicted about the prospect of reunifying with her mother. She had difficulty deciding whether she wanted to return to her mother's care and custody. She was frustrated by mother's inability to complete services and allow the family to reunify. While she wanted to reunify with mother, she also enjoyed her current placement and wanted to continue to live there in a permanent and stable placement.

The caretakers remained willing to provide a permanent home for the children irrespective of their particular permanent plans. They agreed to the social worker's recommendations of adoption for T.C. and legal guardianship for R.B.

In May 2010, a contested Welfare and Institutions Code section 366.26 hearing was held.[1] Mother disagreed with the proposed permanent plans because she believed that if T.C. were adopted by the foster parents, R.B. would not want to leave T.C. and return to her home.

The minors' counsel argued for termination of parental rights as to T.C. Counsel noted she was adoptable and no exceptions to adoption applied. Counsel also specifically argued the sibling relationship exception did not apply because the siblings were placed together and the caretaker was committed to them. The court found T.C. adoptable and terminated parental rights as to her. Through counsel, R.B. informed the court that although she loved her mother and wanted to have a relationship with her, she really wanted guardianship "right now because she feels like this is the place where she can be stable." Accordingly, the court ordered a plan of legal guardianship as to R.B.

## DISCUSSION

Mother contends the trial court abused its discretion in failing to appoint separate counsel for the minors at the permanency planning stage of these proceedings, because it was apparent there was a conflict in their interests. She claims this conflict arose because of the distinct permanent plans recommended as to each child.

For the sake of her argument, we assume both that mother has standing to raise this issue on appeal and that she has not forfeited this argument by failing to raise it in the trial court. Nevertheless, the argument fails.

At the outset of dependency proceedings, a court generally appoints a single attorney to represent all the siblings. (*In re Celine R.* (2003) 31 Cal.4th

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

45, 58 [1 Cal.Rptr.3d 432, 71 P.3d 787].) A court must later relieve counsel from multiple representation of siblings "if, but only if, there is an actual conflict among the siblings or if circumstances specific to the case . . . present a reasonable likelihood an actual conflict will arise." (*Ibid.*)

For an actual conflict to arise at the permanency planning stage, there must be a showing that the siblings have different interests that would require their attorney to advocate a course of action for one child which has adverse consequences to the other. Standing alone, the fact that siblings have different permanent plans does not necessarily demonstrate an actual conflict of interest. (Cal. Rules of Court, rule 5.660(c)(1)(C)(v); *In re Zamer G.* (2007) 153 Cal.App.4th 1253, 1268 [63 Cal.Rptr.3d 769].)

The core of mother's argument of an actual conflict is the claim that counsel owed R.B. a duty to advocate against T.C.'s adoption. That is, the conflict for counsel arose because "counsel believed that adoption was in T.[C.]'s best interests and adoption has adverse consequences for R.[B.]." Accordingly, counsel could not "advocate for R.[B.]'s best interest in maintaining her relationship with her sister without violating her duty to T.[C.] to advocate for her best interests." Framing the claimed conflict in this way disregards the law regarding the sibling relationship exception.

To support her claim, mother relies primarily on *Carroll v. Superior Court* (2002) 101 Cal.App.4th 1423, 1427 [124 Cal.Rptr.2d 891], in which the permanent plan for one sibling, a 12-year-old boy who had expressed a desire to maintain contact with three of his other siblings, was guardianship, while · the permanent plan for the three other siblings was adoption. Because the permanent plan of adoption would sever the sibling relationship between the boy and his siblings, the court found an actual conflict of interest existed. (*Carroll, supra,* at pp. 1426–1427.) The conflict had actualized because advocacy for one minor's best interests was for termination of parental rights and advocacy for another's best interests was against termination of parental rights. (*Id.* at p. 1430.) However, *Carroll* was decided prior to the California Supreme Court's decision in *In re Celine R., supra,* 31 Cal.4th 45.

In *Celine R.,* the Supreme Court clarified that the sibling relationship exception allows consideration only of whether severing the sibling relationship would cause detriment to the child being considered for adoption and not whether it would cause detriment to the child's siblings. (*In re Celine R., supra,* 31 Cal.4th at p. 54.) The court's clarification of the sibling relationship exception calls into question both the continuing viability of that portion of the decision in *Carroll* and claims such as the one made in this case. (*In re Celine R.,* at p. 60.)

The issue to be raised and considered in this case regarding the sibling relationship was whether T.C.'s interest in maintaining the relationship with R.B. outweighed T.C.'s interest in the stability and permanence she could receive in an adoptive home. R.B.'s interest in maintaining the sibling relationship was not at issue. Advocating for T.C.'s interest in adoption had no adverse consequence to R.B.'s interests in the permanence and stability of guardianship. There was no actual conflict of interest between them. The lack of an adverse consequence to R.B. is particularly true in this case. Here, the children live together in the same home and will continue to do so. The adoptive family has repeatedly indicated its commitment to the children, regardless of their permanent plans. R.B. did not express any opposition to T.C.'s being adopted.

■ To the extent there was a "conflict" between the applicability of the sibling relationship exception to this case and T.C.'s interest in the permanence and stability of adoption, it was not a "conflict of interest" caused by dual representation. Rather, it was "conflict" arising from the tension between T.C.'s competing self-interests. These are the kinds of competing interests that counsel and the courts appropriately deal with in virtually every permanency planning hearing involving siblings. They do not require appointment of separate counsel.

Further, even if the court should have appointed separate counsel for the children, we find any error harmless. There is no reasonable probability that the court would have selected different permanent plans but for the error. (*In re Celine R., supra,* 31 Cal.4th at p. 60.)

■ Mother does not make any challenge to the court's findings that T.C. was adoptable and that adoption was in her best interests. There is nothing in the record which indicates adoption was not in T.C.'s best interest. Adoption is the statutory preference. (§ 366.26, subds. (b)(1) & (c)(1).) There is no evidence in the record that any exception to adoption existed. At the contested hearing, mother's counsel agreed that the sibling relationship exception did not apply. Mother does not argue that agreement by counsel on this point was ineffective assistance of counsel; she does not argue the sibling relationship exception applied; nor does she argue that there would be substantial interference in the relationship between T.C. and R.B. as a result of T.C.'s being adopted. On this record, if separate counsel had been appointed, both the argument of counsel and the juvenile court's decision would have been the same.

Similarly, had separate counsel been appointed, R.B.'s counsel would have argued that guardianship for R.B. was the appropriate permanent plan for her. Again, there is nothing in the record which suggests any other plan was in her

best interests and mother does not challenge the court's findings in this regard. Since R.B. was over 12 years old and objected to being adopted, the statutory preference for adoption was overcome. (§ 366.26, subd. (c)(1)(B)(ii).) Thus, in this case, the statutory preference was for guardianship. (§ 366.26, subds. (b)(5) & (c)(4)(A).) Accordingly, even if separate counsel had been appointed, the result would not have been different. T.C. would have been placed for adoption and R.B. would have been placed in a guardianship.

## DISPOSITION

The juvenile court's order terminating parental rights as to T.C. is affirmed.

Raye, P. J., and Robie, J., concurred.