Filed 9/19/14  In re Miriam N. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MIRIAM N. et al, Persons Coming Under the Juvenile Court Law. | D065621 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1058A/B) |
| v. | |
| MARIA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Maria G. appeals juvenile court orders terminating her parental rights to two of her children, Miriam N. and Vanessa N. She contends the court erred by terminating her parental rights and selecting adoption as the permanent plans for these children because the adoptions will interfere with the children's significant relationships with their siblings, Freddy N. and K.L. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2012, the San Diego County Health and Human Services Agency (the Agency) filed petitions under Welfare and Institutions Code[1] section 300 on behalf of 10-year-old Miriam, eight-year-old Vanessa, five-year-old Freddy and two-year-old K.[2] The petitions alleged the children were at substantial risk of harm because Maria's former boyfriend, Ricardo L., had excessively disciplined them by hitting them with a belt or sandal, leaving marks, and he had sexually abused Vanessa, including anal and vaginal penetration, oral copulation, fondling her breasts and exposing her to pornography. The petitions also alleged Maria had failed to protect the children. Miriam, Vanessa and Freddy were detained with their paternal grandparents (the grandparents) and K. in foster care.

In January 2012 the grandmother had noticed marks on Freddy's back. Freddy told her Ricardo hit him and his sisters. Miriam and Vanessa agreed this was true and said they had been afraid to tell of the abuse. Vanessa then told the grandmother

---

[1]  Statutory references are to the Welfare and Institutions Code.

[2]  Freddy and K. are not a part of this appeal.

privately that Ricardo had been sexually abusing her. The grandmother filed a police report. Vanessa said the sexual abuse began when she was seven years old when she and Miriam had moved from the grandparents' home, where they had been living for about three years, to Maria and Ricardo's home. She described acts of sodomy, rape and oral copulation and said Ricardo had her watch pornography with him.

The court found the allegations of the petitions to be true, ordered the older children placed in relative care and K. in foster care and ordered reunification services for Maria, including supervised visitation.

For the six-month hearing, the social worker reported the children were happy to be living with the grandparents, but there was conflict between Maria and the grandmother. Maria was participating in services, including parenting classes, therapy and sexual abuse treatment for nonprotective parents. She was making progress, but had not yet addressed her role in failing to protect Vanessa, and she was just beginning to work on a safety plan. The social worker suggested the children begin having unsupervised visits.

At the six-month review hearing on August 23, 2012, the court continued Miriam, Vanessa and Freddy in relative care and K. in foster care and continued services.

For the 12-month review hearing, the social worker reported Miriam and Vanessa were very attached to the grandmother and wanted to continue living with her. Miriam said Maria had a new boyfriend and did not pay much attention to them when they had unsupervised visits, and she did not feel safe with Maria. Vanessa was angry with Maria and believed she would not make her children her top priority. After Freddy and K. had

3

unsupervised visits with Maria for a time, the social worker recommended they be placed with her.

At the 12-month hearing on April 12, 2013, the court continued services and continued Miriam and Vanessa in relative care. The court ordered Freddy and K. placed with Maria.

For the 18-month report, the social worker reported Miriam and Vanessa were doing well in the grandparents' home, but the relationship between Maria and the grandmother appeared strained although at times they got along well. Miriam and Vanessa said they did not feel safe with Maria and did not want to visit her unless the grandmother was also present.

At the 18-month permanency hearing on September 24, 2013, the court found reasonable services had been provided and returning Miriam and Vanessa to Maria's care would be detrimental. The court terminated reunification services and set a section 366.26 hearing to select and implement permanent plans.

The social worker reported Miriam and Vanessa had lived with the grandparents for much of their lives. They said they wanted to be adopted by the grandmother, and she was committed to adopting them. The grandmother wanted to give them a stable and nurturing environment and was willing to continue to facilitate visits between the girls and their two younger siblings. The social worker said the grandmother welcomed Maria to her home for visits and encouraged visits among the siblings. Miriam said she liked visiting Freddy and K. and spending time with them. Vanessa said she would like to see

4

her sibling more often. Both girls said they wanted to be adopted even if it meant they would not have continued contact with their siblings.

At the section 366.26 hearing on February 27, 2014, the social worker testified that at a visit he observed the four siblings interacted and appeared to enjoy being together. Maria testified that before the dependency case began, the children had lived with her for about 18 months, and Freddy had lived with Miriam and Vanessa at the grandparents' home before he was returned to her care in March 2013. She said at the last sibling visit, the children were affectionate toward each other and enjoyed playing together. She was concerned the grandmother would move the children to Mexico, and she would not be able to go there because she is undocumented.

After considering the evidence and argument by counsel, the court found Miriam and Vanessa were likely to be adopted if parental rights were terminated, and none of the statutory exceptions to termination of parental rights and adoption applied. The court terminated parental rights and designated the grandmother as the prospective adoptive parent.

DISCUSSION

Maria contends the court erred by terminating her parental rights and selecting adoption as the permanent plans for Miriam and Vanessa because the adoptions will interfere with their significant relationships with Freddy and K.

5

*A. Statutory Framework*

Adoption is the permanent plan favored by the Legislature.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.)  If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because of a specified statutory exception to termination of parental rights and adoption.  (*Id.* at p. 574.)

Under section 366.26, subdivision (c)(1)(B)(v), if the court finds the child will be adopted within a reasonable time, adoption must be ordered " 'unless the court finds a compelling reason for determining that termination [of parental rights] would be detrimental to the child' because '[t]here would be substantial interference with a child's sibling relationship . . . .' "  (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 811.)  The purpose of this exception is to preserve long-standing sibling relationships that serve as "anchors for dependent children whose lives are in turmoil."  (*In re Erik P.* (2002) 104 Cal.App.4th 395, 404.)  The sibling relationship exception contains "strong language creating a heavy burden for the party opposing adoption."  (*In re Daniel H.*, *supra*, 99 Cal.App.4th at p. 813.)  Factors for the court to consider include the nature and extent of the sibling relationship; whether the siblings were raised in the same home; whether they share a close bond; and whether continued contact is in the child's best interests, as compared to the benefits of adoption.  (*Id.* at p. 811.)  The court considers the best interests of the adoptive child, not the best interests of the other siblings.  (*Id.* at p. 813.)  If adoption would cause substantial disruption to the relationship a child has with a

6

sibling, the court must weigh the benefits the child would gain by adoption against the benefits for the child of maintaining the sibling relationship. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 952-953.)

The reviewing court applies the substantial evidence test to a review of the applicability of the sibling relationship exception to termination of parental rights and adoption. (*In re L.Y.L., supra,* 101 Cal.App.4th at p. 947.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

*B. Application*

Maria has not shown error by the court not applying the sibling relationship exception of section 366.26, subdivision (c)(1)(B)(v) in this case.

The grandmother was committed to adopting Miriam and Vanessa, and the grandparents had taken steps toward having their home approved for adoption. During the many months of the girls' dependency, the grandmother had welcomed Maria into her home and facilitated sibling visits. She was Freddy's grandmother as well, had a history of encouraging visits among the siblings and said she was willing to continue to facilitate sibling visits. The evidence indicates adoption by the grandmother would not substantially interfere with Miriam and Vanessa's relationships with their younger siblings. Moreover, should sibling visitation not occur for any reason, Maria has not

7

shown the benefits to Miriam and Vanessa from their relationships with Freddy and K. were so strong as to outweigh the benefits to the girls of adoption.

DISPOSITION

The orders are affirmed.


NARES, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.

8