Filed 12/22/15  In re F.B. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Shasta)

----

| | |
|---|---|
| In re F.B., Jr., et al., Persons Coming Under the Juvenile Court Law. | C078850 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>F.B., Sr., et al.,<br><br>Defendants and Appellants. | (Super. Ct. Nos. 11JVSQ29062-01, 11JVSQ29063-01, 11JVSQ29064-01, 11JVSQ29065-01) |

Mother of the four minors appeals from the juvenile court's orders denying her petitions for modification and terminating her parental rights with respect to the two younger minors.  Father of the two younger minors also appeals the termination of his parental rights.  (Welf. & Inst. Code, §§ 395, 388, 366.26.)[1]  Both appellants contend the juvenile court erred in not finding the sibling relationship exception to adoption applied.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Mother also contends the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied and in denying her petitions for modification. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 2011, a Redding police officer responded to a welfare check at the parents' home. The home was found to be unsanitary, without electricity, and with no edible food. Animal feces were found on the floor in every room of the house and dishes were stacked high in the kitchen with rotting food. The home had a strong odor of urine, feces, and garbage. Minors B.S. (then age nine), M.W. (then age seven), A.B. (then age two), and F.B., Jr. (then age 19 months), were tired and unbathed, and their belongings smelled of urine and feces.

Two days later, social workers investigated the home and also found it filthy as described by the police officer. The parents stated that the electricity had been turned off due to financial problems and the condition of the house was " 'getting away from [them].' " They agreed the condition of the home was unsafe and that the minors should stay out of the home until the threat of safety was eliminated.

The parents had had 15 prior referrals since 2002 due to unsanitary and unfit housing conditions. They had had three previous voluntary cases opened and had been offered services, but the unsuitable housing conditions returned after the cases were closed. B.S. had been in foster care three times before, and M.W. had been in foster care once before.

A section 300 petition was filed on behalf of all four minors in October 2011, alleging they were at risk due to the unfit conditions of the home. (§ 300, subd. (b)—failure to protect.) The juvenile court found the allegations true, declared the minors

dependents of the court, removed them from the parents' custody and ordered that reunification services be provided.

Initially, the reunification services ordered centered on parenting and maintaining suitable living conditions. The parents had completed substance abuse assessments in November 2011 and no services were recommended. The parents had completed a domestic violence assessment inventory in December 2011, which indicated no need for domestic violence services. After an incident in December 2012, wherein father was responsible for significant bruising to mother, domestic violence services were added. After mother failed to take a random drug test and both parents tested positive for opiates on another occasion when neither had a valid prescription, further inquiry regarding the parents' opiate use was made. It was discovered that father had been provided opiate prescriptions at emergency room visits 10 times over the previous two years. Mother had been provided opiate prescriptions on 24 occasions over the previous two years.[2] Accordingly, in November 2013, substance abuse services were added to the parents' case plan.

During the course of reunification services, home visits continued to reveal deplorable living conditions, including cat urine, choking hazards, insulin needles on tables, and decaying food. On January 6, 2014, reunification services were terminated. Visitation was reduced to once a month for one hour, fully supervised.

Mother filed petitions for modification of the order terminating her reunification services on May 20, 2014. She alleged she had obtained an AA/NA (Alcoholics Anonymous/Narcotics Anonymous) sponsor, attended required meetings, moved to sober living housing, and been clean and sober for seven months. She sought return of the minors with family maintenance services.

---

[2] Mother had also used opiates during her pregnancies with the two youngest minors.

The hearing on the petitions did not take place until March 2015, in combination with the section 366.26 hearing. The juvenile court denied mother's petitions to modify, finding "no change in circumstances." In making its ruling, the juvenile court expressly found mother's testimony "replete with inconsistencies." Thereafter, the juvenile court found A.B. and F.B., Jr.—the two younger minors who were placed in a prospective adoptive home—to be adoptable and terminated parental rights as to those minors. The juvenile court did not terminate parental rights as to B.S., for whom it made a plan of long-term care with a goal of adoption. It also did not terminate parental rights as to M.W., whom it found was not likely to be adopted.

Additional facts relevant to the issues presented are contained in the discussion of the issues.

## DISCUSSION

### I. Mother's Petitions for Modification

Mother contends the juvenile court abused its discretion in denying her section 388 petitions. We find no error.

Section 388, subdivision (a)(1) provides that a parent of a dependent child may petition the juvenile court "upon grounds of change of circumstance or new evidence . . . for a hearing to change, modify, or set aside any order of court previously made . . . ." Section 388 permits modification of a dependency order if a change of circumstance or new evidence is shown and if the proposed modification is in the best interests of the minor. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.)

The party petitioning for modification has the burden of proof by a preponderance of the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.) A modification petition "is addressed to the sound discretion of the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.*

4

(1994) 8 Cal.4th 398, 415.)  Here, as the juvenile court found, mother failed to prove a change in circumstances as required by section 388.

Mother filed her petitions for modification on May 20, 2014.  At the time she filed her petitions, she understood her case plan to consist of keeping a clean house, maintaining a suitable home for the minors, ceasing use of opiates, and attending NA meetings.  In her petitions, she alleged she had obtained a sponsor and been attending NA meetings, been attending options meetings, moved to Parkview Sober Living housing (Parkview), and been clean and sober for seven months.

The hearing on the petitions did not take place until March 16, 2015.  Between the time her petitions were filed and the hearing on the petitions, social workers had made three unannounced home visits, finding unsuitable conditions on all three occasions.  On August 7, 2014, while the parents were still living at Parkview, the home was found to be cluttered with numerous cats and debris all over the floor.  On September 15, 2014, also while the parents were still living at Parkview, the home was reported as filthy with multiple cats and debris all over the floor, as well as a large hole in the wall that appeared to be where an air conditioner had once been.  On February 9, 2015, after the parents left Parkview, and only three months before the hearing, there were cat feces and debris on the floor, and the kitchen counters and table were cluttered with debris and old food.  On all three visits, other unknown adults appeared to be living in the parents' home.

Also, in the three months prior to the time mother filed her petitions for modification, mother had been prescribed opiates on three separate occasions.  She claimed to have picked up her prescriptions but to have not taken the medication.  However, at the February 9, 2015 unannounced home visit, mother admitted she was taking both Vicodin and codeine.

In support of her argument that she established changed circumstances, mother relies almost exclusively on her testimony that she had learned better parenting skills,

5

admitted fault, kept her house clean, and was capable of preventing the past "incidents" from occurring. However, not only did the juvenile court find mother's testimony to lack credibility, the evidence contained in the social worker's report belied mother's claims. (See *In re Christina T.* (1986) 184 Cal.App.3d 630, 639 [issues of fact and credibility are within province of juvenile court].) Unannounced home visits revealed the condition of mother's home to be unacceptable, and mother was still using opiates. The juvenile court did not err in denying mother's section 388 petitions for modification for failure to establish a change in circumstance.

## II. Sibling Exception to Adoption

Mother contends the juvenile court erred in declining to apply the sibling exception to adoption. Father joins in mother's argument. We find no error.

At the selection and implementation hearing held pursuant to section 366.26, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption.* [Citation.]' [Citations.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.)

There are only limited circumstances which permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child . . . ." (§ 366.26, subd. (c)(1)(B).) One such circumstance is when "[t]here would be substantial interference with a child's sibling relationship, taking into consideration the nature and extent of the relationship, including, but not limited to, whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest,

as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).)

There is a "heavy burden" on the parent opposing adoption under the sibling exception. (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 813.) The authors of the legislation adding the sibling exception envisioned that its applicability would " 'likely be rare.' " (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 950.) This language has been interpreted to mean "that the child's relationship with his or her siblings would rarely be sufficiently strong to outweigh the benefits of adoption." (*Ibid*.) "To show a substantial interference with a sibling relationship the parent must show the existence of a significant sibling relationship, the severance of which would be detrimental to the child. Many siblings have a relationship with each other, but would not suffer detriment if that relationship ended. If the relationship is not sufficiently significant to cause detriment on termination, there is no substantial interference with that relationship." (*In re L. Y. L.*, at p. 952, fn. omitted.)

The question here is whether the younger minors' interests in maintaining a relationship with the older siblings outweighed the benefit of permanence and stability in an adoptive home. Mother argues that all four minors had consistent contact through visitation throughout the pendency of the case. She argues that "[a]t the outset, the three younger children were said to be forming a strong sibling bond" and that "[u]ntil the very end, [B.S.] wanted to be placed with [A.B.] But while there was some evidence that the oldest minor B.S. was bonded to her younger sister A.B., and that termination might have some detrimental effect on B.S., her interests were not at issue when considering adoption of A.B. and F.B., Jr. The court must consider the interests of the adoptive child, not the siblings, in determining whether termination would be detrimental to the adoptive child. (*In re Daniel H.*, *supra*, 99 Cal.App.4th at p. 813; *In re Celine R.* (2003) 31 Cal.4th 45, 49-50.)

With respect to the "strong sibling bond" mother argues the siblings had been "forming" at the outset, mother refers to an August 2012 status report, written when M.W., A.B., and F.B., Jr., were all placed together and reportedly "forming a strong sibling bond." However, in April 2014, M.W. was removed from the home due to behavior problems. Since that time, A.B. and F.B., Jr., had remained placed together in the same prospective adoptive home, and separate from B.S. and M.W.

The social worker's January 2015 report expressly addressed the relationship between the siblings as follows: "The siblings are currently visiting twice a month at the Foster Family Agency and this contact is arranged by the current caretakers. During visits between siblings, [A.B.] and [F.B., Jr.,] mostly play together by themselves and there is little interaction between their [older] siblings, [M.W.] and [B.S.] When these visits end, there is an easy separation and the children do not present as troubled, bothered or concerned about leaving each other. During times of absence between siblings, [A.B.] and [F.B., Jr.,] do not ask about their siblings. While they have been visiting regularly, the children have no significant bond with one another that would lead to substantial interference or detriment once permanency is established."

Presented with this evidence, the juvenile court did not err in declining to apply the sibling exception to adoption.

### III. Beneficial Relationship Exception to Adoption

Mother also contends the juvenile court erred by failing to find an exception to adoption based on her relationship with the two younger minors. We disagree.

Another circumstance which permits the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child" is when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).)

8

To prove that the beneficial parental relationship exception applies, the parent must show there is a significant, positive emotional attachment between the parent and child. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1419.) And even if there is such a bond, the parent must prove that the parental relationship " 'promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.' " (*In re S.B.* (2008) 164 Cal.App.4th 289, 297, quoting *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575; accord, *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1347.) " 'In other words, the court balances the strength and quality of the natural parent[-]child relationship in a tenuous placement against the security and the sense of belonging a new family would confer.' " (*L. Y. L.*, *supra*, 101 Cal.App.4th at p. 953, quoting *Autumn H.,* at p. 575.) " 'When the benefits from a stable and permanent home provided by adoption outweigh the benefits from a continued parent/child relationship, the court should order adoption.' " (*Jasmine D.*, *supra*, 78 Cal.App.4th at p. 1350; *Autumn H.*, at p. 575.) "Because a section 366.26 hearing occurs only after the court has repeatedly found the parent unable to meet the child's needs, it is only in an extraordinary case that preservation of the parent's rights will prevail over the Legislature's preference for adoptive placement." (*Jasmine D.*, at p. 1350.)

Here, A.B. was removed from mother's custody when she was two years old. F.B., Jr., was removed when he was 19 months old. Both minors have been in foster care for almost their entire lives. Although they may have known mother was their biological mother, they had not been in her care and custody for approximately four years. While mother visited regularly, visitation had been limited to supervised visitation for only one hour a month for over a year, with no evidence of detriment to the minors from the limited contact with mother. There was also no evidence that the minors had any difficulty leaving mother at the end of visits except a single instance near the end of a

January 2014 visit wherein A.B., after crying from being scolded, responded to mother's statement that she loved A.B. with, " 'I want to go home with you.' "

Father simply testified that A.B. and F.B., Jr., gave the parents hugs at the beginning of visits, which is insufficient to establish a significant, positive emotional attachment. And there was evidence A.B. had cried and stated once during a visit that she wanted to go home with mother. Although mother described her relationship to the minors as close and loving, she points to no other evidence that either A.B. or F.B., Jr., would suffer any detriment should parental rights be terminated.

In light of the minors' young age at removal, the length of time they had been out of the parents' care, and the lack of evidence showing a strong bond that would be detrimental to the minors to sever, the trauma they were exposed to while in the parents' care, and the evidence suggesting the minors would be able to bond with their prospective adoptive family, the juvenile court was warranted in concluding that the advantages of adoption outweighed any benefit to the minors of maintaining a relationship with mother.

## DISPOSITION

The orders of the juvenile court are affirmed.

                                               _____BUTZ_____ , Acting P. J.

We concur:

_____DUARTE_____ , J.

_____HOCH_____ , J.